[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11489
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 9, 2012
JOHN LEY
CLERK

D.C. Docket No. 1:10-cr-20685-DMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YANNY AGUILA-URBAY,
a.k.a. Negro,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 9, 2012)

Before TJOFLAT, EDMONDSON and ANDERSON, Circuit Judges.

PER CURIAM:

Yanny Aguila-Urbay appeals his conviction and sentence for conspiracy to

possess stolen firearms and silencers, in violation of 18 U.S.C. § 922(j), to possess machine guns, in violation 18 U.S.C. § 922(o), and to transport, ship, and receive any explosive materials, in violation of 18 U.S.C. § 842(a)(3)(A), all in violation of 18 U.S.C. § 371. He presents four issues on appeal.[1]

## I.

Aguila-Urbay argues that the district court erred in admitting evidence of his involvement in illicit activities other than the offense charged and that the evidence should have been excluded under Fed.R.Evid. 404(b). He asserts that the evidence of his involvement in illicit activities was not inextricably intertwined with the evidence presented at trial because the evidence was not vital to the government's case against him. He contends that the evidence referencing his involvement in illicit activities should have been excluded under Fed.R.Evid. 403 because its probative value was substantially outweighed by the danger of unfair prejudice. Finally, Aguila-Urbay argues that the court allowed the admission of multiple hearsay statements without allowing him an opportunity to cross-examine the declarant, in violation of his Sixth Amendment right to confrontation. Specifically, those statements concerned how an undercover officer learned that Aguila-Urbay would be interested in certain types of weapons. Aguila-Urbay

---

[1] Aguila-Urbay's motion for leave to file a reply brief out of time is GRANTED.

2

concludes that, based on the admission of improper evidence at trial, his conviction should be reversed.

We review evidentiary rulings for an abuse of discretion. *United States v. Mateos*, 623 F.3d 1350, 1365 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 1540 (2011). However, we review "*de novo* the question of whether hearsay statements are testimonial for purposes of the Confrontation Clause." *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010) (quotations omitted). A limiting instruction may be sufficient to cure the risk of undue prejudice in specific circumstances. *Mateos*, 623 F.3d at 1365. We presume that the jury follows the court's instructions. *United States v. Chandler*, 996 F.2d 1073, 1088 (11th Cir. 1993). We will only reverse an evidentiary ruling when it has affected a defendant's substantial rights. *United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir. 2004).

Extrinsic evidence of other crimes, wrongs, or acts is inherently prejudicial to the defendant and may cause the jury to "convict the defendant not for the offense charged but for the extrinsic offense." *United States v. Baker*, 432 F.3d 1189, 1205 (11th Cir. 2005) (quotation omitted). Thus, under Fed.R.Evid. 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in

3

accordance with the character." Fed.R.Evid. 404(b)(1). We use a three-part test to determine whether other bad acts are admissible under Rule 404(b):

> First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice . . . .

*United States v. McNair*, 605 F.3d 1152, 1203 (11th Cir. 2010) (quotation omitted), *cert. denied*, 131 S.Ct. 1600 (2011).

Intrinsic evidence, or evidence that is "not extrinsic," is not covered by Rule 404(b). *United States v. Ellisor*, 522 F.3d 1255, 1269 (11th Cir. 2008). Evidence of criminal activity other than the offense charged is intrinsic if it is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *Id.* (quotation omitted). Evidence is also intrinsic if it pertains to the "chain of events explaining the context, motive and set-up of the crime, . . . or forms an integral and natural part of an account of the crime . . . ." *United States v. McLean*, 138 F.3d 1398, 1403 (11th Cir. 1998) (quotation omitted).

Intrinsic evidence is still subject to Rule 403 balancing. *United States v. Utter*, 97 F.3d 509, 514-15 (11th Cir. 1996). Under Rule 403, evidence should be

4

excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." *Wright*, 392 F.3d at 1276 (quotation omitted). The major function of Rule 403 is to exclude evidence "of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *Utter*, 97 F.3d at 514-15 (quotations omitted). Further, Rule 403 "is an extraordinary remedy which should be used sparingly since it permits the trial court to exclude concededly probative evidence." *Wright*, 392 F.3d at 1276 (quotation and ellipsis omitted). "The nature of the government's evidence against a defendant is meant to be prejudicial, for if all evidence were favorable, there would be no trial." Therefore, we ask "not whether the evidence itself is prejudicial, but rather whether its probative value is outweighed by its prejudicial effect." Thus, the balancing test of Fed.R.Evid. 403 weighs in favor of admissibility. *Id.*

In addition to certain evidence not being admissible under Rule 404(b), the Confrontation Clause of the Sixth Amendment prohibits the admission of certain forms of hearsay, specifically testimonial, out of court statements, unless the declarant is unavailable and the defendant had a previous opportunity to cross-examine the declarant. *United States v. Jiminez*, 564 F.3d 1280, 1286-87 (11th Cir. 2009). Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

matter asserted." *Id.* (quotation omitted); Fed.R.Evid. 801(c). The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. *Jiminez*, 564 F.3d at 1287.

> We have long recognized that:
>
> [s]tatements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement.

*Id.* at 1288 (quotation omitted). Further, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." *United States v. Mateos*, 623 F.3d 1350, 1364 (11th Cir. 2010) (quotation omitted), *cert. denied*, 131 S.Ct. 1540 (2011); Fed.R.Evid. 801(c).

First, the district court did not abuse its discretion in admitting evidence at trial referencing Aguila-Urbay's involvement in illicit activity other than the charged offense because the references were inextricably intertwined with the evidence regarding the charged offense. It was necessary for the jury to understand how witness and undercover officer Perez met Aguila-Urbay, and it was part of the chain of events leading to the discussions about weapons.

6

Further, the references should not have been excluded under Rule 403. Aguila-Urbay's defense was that he only discussed the weapons transaction, but that he never took any action relating to the discussions. A large portion of the evidence that the Government presented at trial was in the form of tape recordings of conversations that Aguila-Urbay had with Perez and co-defendant Hamayel. The jury could use those transcripts and recording to evaluate the truth of Aguila-Urbay's defense. Moreover, the district court's instructions regarding the proper use of the evidence cured any prejudice resulting to Aguila-Urbay. Thus, the probative value of the evidence outweighed any prejudice effect the evidence would have on the jury.

Next, the government witness's responses to the government's questions as to where he got information regarding Aguila-Urbay were not hearsay and, therefore, were not violative of the Confrontation Clause. *Jiminez*, 564 F.3d at 1287. The responses demonstrated why the government witness took specific investigatory action and were not to show the truth of the statements. Finally, the district court instructed the jury that these statements were not to be considered for the truth of the matter asserted and were only to give the jury context to why Perez acted a specific way. Thus, the district court did not abuse its discretion with respect to its evidentiary rulings.

II.

Aguila-Urbay argues that the evidence presented at trial was insufficient to support his conviction under 18 U.S.C. § 371. He contends that there was no evidence presented that a meeting of the minds or an agreement to commit a crime ever occurred, in part, because his co-conspirator told an undercover officer that he wanted Aguila-Urbay taken out of the venture. Further, Aguila-Urbay argues that there were no steps taken in furtherance of the alleged conspiracy, and no evidence was presented that he was actually pursuing the deal.

We review whether evidence presented at trial was sufficient to convict a defendant *de novo*. *United States v. Faust*, 456 F.3d 1342, 1345 (11th Cir. 2006). In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the government, with all inferences and credibility choices made in the government's favor, and affirm the conviction if, based on this evidence, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nolan*, 223 F.3d 1311, 1314 (11th Cir. 2000) (quotation omitted). It is not necessary that the evidence presented at trial excludes every reasonable hypothesis of innocence or is wholly inconsistent with every conclusion except that of a defendant's guilt. *Faust*, 456 F.3d at 1345.

To sustain a conviction under 18 U.S.C. § 371, the government must prove

8

"(1) that an agreement existed between two or more persons to commit a crime; (2) that the defendant knowingly and voluntarily joined or participated in the conspiracy; and (3) a conspirator performed an overt act in furtherance of the agreement." *United States v. Ndiaye*, 434 F.3d 1270, 1294 (11th Cir. 2006). A conspiratorial agreement "may be proven by circumstantial evidence, including inferences from the conduct of the alleged participants or from circumstantial evidence of a scheme. " *United States v. Silvestri*, 409 F.3d 1311, 1328 (11th Cir. 2005) (quotation omitted). A defendant's agreement to join a conspiracy may be inferred from acts that further the conspiracy's purpose. *United States v. Brenson*, 104 F.3d 1267, 1282 (11th Cir. 1997). "Every member of the conspiracy need not be an active participant in every phase of the conspiracy so long as he is a party to the general conspiratorial agreement." *United States v. Russell*, 703 F.2d 1243, 1250 (11th Cir. 1983). Thus, one may be found guilty of participating a conspiracy even though his role is minor in the overall scheme. *United States v. Calderon*, 127 F.3d 1314, 1326 (11th Cir. 1997).

"The knowledge requirement is satisfied when the Government shows a defendant's awareness of the essential nature of the conspiracy." *Ndiaye*, 434 F.3d at 1294. Further, the government does not need to prove that the defendants accomplished the purpose of the conspiracy. *United States v. Campa*, 529 F.3d

9

980, 1002 (11th Cir. 2008). "The overt act requirement in the conspiracy statute can be satisfied much more easily. Indeed, the act can be innocent in nature, provided it furthers the purpose of the conspiracy." *Id.* (quotation omitted).

It is unlawful under 18 U.S.C. § 922(j) for an individual to possess a stolen firearm, which was part of interstate commerce, where the individual knew or had reason to know that the firearm was stolen. *See* 18 U.S.C. § 922(j); *United States v. Smith*, 532 F.3d 1125, 1127 n.1, 1129 (11th Cir. 2008). Under 18 U.S.C. § 922(o), it is unlawful "for any person to transfer or possess a machine gun." Under 18 U.S.C. § 842(a)(3), it is unlawful to "to transport, ship or cause to be transported, or receive any explosive materials" if an individual is not a licensee or permittee.

There was sufficient evidence presented to show that Aguila-Urbay agreed to commit an offense that would violate 18 U.S.C. § 922(j), 18 U.S.C. § 922(o), and 18 U.S.C. § 842(a)(3) if the offense were completed. Based on the testimony at trial of Perez, the evidence showed Aguila-Urbay took part in negotiations for a weapons transaction that would involve firearms, silencers, machine guns, and explosives. Further, Perez's extensive testimony showed that Aguila-Urbay had knowledge of the conspiracy and voluntarily joined the conspiracy. Perez's testimony that he had discussions with Aguila-Urbay about the quantities and

10

prices of the weapons and that Aguila-Urbay met with the ultimate buyers of the weapons showed that Aguila-Urbay performed overt acts in furtherance of the agreement. Finally, even after Aguila-Urbay's co-conspirator told Perez that he no longer wanted Aguila-Urbay involved in the weapons transaction, evidence showed that Aguila-Urbay continued to participate in the conspiracy and volunteered to transport the weapons. Thus, there was sufficient evidence to support Aguila-Urbay's conviction under 18 U.S.C. § 371.

III.

Aguila-Urbay argues that the district court committed reversible error when it failed to grant his motions for an evidentiary hearing on his motions for disclosure of exculpatory evidence and to suppress his post-arrest statement that were made after the government disclosed two Federal Bureau of Investigation ("FBI") reports concluding that the FBI was ending its terrorism investigation against Aguila-Urbay. Aguila-Urbay made these motions at the eve of trial, immediately after the government disclosed the FBI reports, and the district court denied these motions as untimely. In his request for exculpatory materials, Aguila-Urbay requested a hearing to inquire into the basis of the FBI reports. With respect to his motion to suppress his post-arrest statement, Aguila-Urbay argues that, had he received the FBI reports in a timely manner, he would have

11

filed a timely motion to suppress regarding the issue of the FBI's potential motivation to secure his confession. Because of the court's refusal to hold a full hearing on his motions, Aguila-Urbay contends that he was deprived of an opportunity to explore the implications of the FBI reports fully and to react to the reports.

### *Brady* Violations

We review *de novo* alleged *Brady* violations. *United States v. Jones*, 601 F.3d 1247, 1266 (11th Cir. 2010). A *Brady* violation of a defendant's due process rights occurs where the prosecution suppresses material evidence favorable to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). We have held that "regardless of request, favorable, exculpatory or impeachment evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Scheer*, 168 F.3d 445, 451 (11th Cir. 1999) (quotation omitted). In order to show a reasonable probability that the result would have been different, a defendant must show that the government's evidentiary suppression undermined confidence in the outcome of the trial. *Id.* at 452.

12

The typical *Brady* claim involves "the discovery, *after* trial of information which had been known to the prosecution but unknown to the defense." *United States v. Kubiak*, 704 F.2d 1545, 1549 (11th Cir.1983) (quotations omitted). However, a *Brady* claim can also involve a mere delay in the transmission of the material to the defense and "not outright omission that remained undiscovered until after trial." *Id.* The delayed disclosure of *Brady* evidence compels reversal only when the defendant demonstrates prejudice, in that the delay effectively rendered the material unusable. *United States v. Beale*, 921 F.2d 1412, 1426 (11th Cir. 1991).

The government is not required to disclose the contents of files or submit them for *in camera* review simply based on the defendant's unsupported contention that they might contain information of significance to his case. *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1189 (11th Cir. 2006). The district court does not have to order discovery based on mere speculation as to whether the material would contain exculpatory evidence because to do so would "convert *Brady* into a discovery device and impose an undue burden upon the district court." *Id.* (quotation omitted).

**Suppression of Post-Arrest Statements**

We apply a mixed standard of review to the denial of a suppression motion,

13

reviewing the district court's findings of fact for clear error and its application of the law to those facts *de novo*. *United States v. Farley*, 607 F.3d 1294, 1325 (11th Cir.), *cert. denied*, 131 S.Ct. 369 (2010). The voluntariness of a defendant's statement is a question of law. *Id.* at 1326. The district court's decision as to whether to hold an evidentiary hearing on a motion to suppress is reviewed for an abuse of discretion. *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000). Even when a district court erroneously denies a defendant's motion to suppress, the error is harmless if, in the absence of the confession, the evidence against the defendant is still sufficient to support his conviction. *United States v. Burgest*, 519 F.3d 1307, 1311 (11th Cir. 2008).

A district court's denial of a motion as untimely is reviewed for an abuse of discretion. *United States v. Snipes*, 611 F.3d 855, 864 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 2962 (2011). The Federal Rules of Criminal Procedure provide that a district court may set a deadline for the filing of all pretrial motions and requests. Fed.R.Crim.P. 12(c). Any motions not filed by the deadline are considered to be waived. Fed.R.Crim.P. 12(e). The district court may grant relief from the waiver if the party is able to show good cause for the late filing. Fed.R.Crim.P. 12(e); *United States v. Johnson*, 713 F.2d 633, 649 (11th Cir. 1983) (concluding that good cause existed where the government did not give notice of

14

its intent to introduce evidence until after the deadline for filing a motion to suppress had passed). A district court may deny a motion to suppress as untimely without conducting a hearing, even where the motion concerns the voluntariness of statements made to the police. *See United States v. Taylor*, 792 F.2d 1019, 1025 (11th Cir. 1986) (holding that while it may be permissible for the district court to consider a motion to suppress involuntary statements despite its untimeliness, the district court is not required to do so).

Defendants are not entitled to an evidentiary hearing based on a "promise" to prove at the hearing that which they did not specifically allege in their motion to suppress. *Cooper*, 203 F.3d at 1285 (quotation omitted). Thus,

> [w]here a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion.

*Id.* "A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. A court need not act upon general or conclusory assertions." *Id.* at 1284 (quotation and ellipses omitted).

Although the Fifth Amendment's privilege against self-incrimination is fully applicable during a custodial interrogation, a suspect may still waive his right

15

to remain silent after being properly advised of it if he does so "voluntarily, knowingly and intelligently." *Farley*, 607 F.3d at 1326 (quotation omitted). The government has the burden of showing the knowing and intelligent nature of a waiver and must show (1) that a defendant's right to remain silent was relinquished voluntarily in "that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception" and (2) that the waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quotation omitted). If a court finds that the "totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension," the right to remain silent has been validly waived. *Id.* (quotation omitted). Because the only issue in determining whether the right to remain silent has been validly waived is whether the defendant's decision to waive his rights was knowing and voluntary, the only relevant state of mind is that of the defendant himself. *Id.* at 1330 (holding that law enforcement's subjective motives are irrelevant for the purposes of determining whether a waiver was voluntarily and knowingly waived).

Aguila-Urbay's motion to suppress his post-arrest statement was untimely filed, and he failed to show good cause for excusing his untimely motion. Despite Aguila-Urbay's assertion that the government's disclosure of two FBI reports

16

constitute *Brady* materials and that the reports supported his motion to suppress his post-arrest statements, the FBI reports do not bear on the voluntariness of Aguila-Urbay's post-arrest statements because there is no connection between the FBI reports and Aguila-Urbay's post-arrest statements based on the plain language of the reports. To the extent that Aguila-Urbay argues that the district court erred by not holding an evidentiary hearing with respect to his motion for *Brady* materials, the district court did not abuse its discretion in its decision not to hold an evidentiary hearing. The reports, based on their plain language were not favorable to the defense of this case and were not *Brady* materials. The district court did not have to investigate the reports further at an evidentiary hearing or even order discovery based on Aguila-Urbay's "mere speculation" that the government possessed exculpatory materials. *Arias-Izquierdo*, 449 F.3d at 1189.

IV.

Aguila-Urbay argues that the district court misapplied the 18 U.S.C. § 3553(a) sentencing factors when it sentenced him to 60 months' imprisonment, which constituted both the applicable guideline range and the statutory maximum sentence allowed for the offense. Aguila-Urbay asserts that his co-conspirator was sentenced to 48 months' imprisonment, despite his co-conspirator's larger role in the conspiracy. Aguila-Urbay contends that the only reason for the difference in

17

sentences was the fact that his co-conspirator spared the government the need to go to trial, which Aguila-Urbay argues is not a legitimate consideration under the sentencing factors of 18 U.S.C. § 3553(a).

We generally review the reasonableness of a sentence under a deferential abuse of discretion standard of review. *Gall v. United States*, 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007). "A district court's sentence need not be the most appropriate one, it need only be a reasonable one." *United States v. Irey*, 612 F.3d 1160, 1191 (11th Cir. 2010) (*en banc*), *cert. denied*, 131 S.Ct. 1813 (2011). We "may set aside a sentence only if we determine, after giving a full measure of deference to the sentencing judge, that the sentence imposed truly is unreasonable." *Id.* The party challenging the sentence has the burden of establishing that the sentence was unreasonable based on the record and the factors set forth in 18 U.S.C. § 3553(a). *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). Although we do "not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect a sentence within the Guidelines range to be reasonable." *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (quotation and ellipsis omitted).

The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a)(2), including

the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct. *See* 18 U.S.C. § 3553(a)(2). In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

We undertake a two-part inquiry in evaluating a sentence's reasonableness. First, we ensure that the district court committed no significant procedural error, such as improperly calculating the guideline range, treating the Guidelines as mandatory, failing to consider § 3553(a) factors, selecting a sentence based on clearly erroneous factors, or failing to explain adequately the chosen sentence. *United States v. Gonzales*, 550 F.3d 1319, 1323 (11th Cir. 2008). If there are no such errors, the second step is to review the sentence's substantive reasonableness by "examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question." *Id.* at 1323-24.

Although one of the 18 U.S.C. § 3553(a) factors focuses on the need to avoid unwarranted sentencing disparities, a defendant may not rely on another co-conspirators' sentence to show unwarranted disparities unless the defendant has first shown that he is similarly situated. *McNair*, 605 F.3d at 1231-32. "[T]here is no unwarranted disparity when a cooperating defendant pleads guilty and receives a lesser sentence than a defendant who proceeds to trial." *United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009). "Defendants who cooperate with the government and enter a written plea agreement are not similarly situated to a defendant who provides no assistance to the government and proceeds to trial." *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009). "On a practical level, it would seem patently unreasonable to endorse a regime in which a defendant could steadfastly withhold cooperation from the authorities and then cry foul when a coconspirator benefits from rendering substantial assistance to the government." *Id.* (quotation omitted).

The district court stated that the difference between Aguila-Urbay's sentence and his co-conspirator's sentence of 48 months' imprisonment was based on the fact that his co-conspirator pled guilty and accepted responsibility for his offense. Thus, Aguila-Urbay failed to show that he was similarly situated to his co-conspirator and failed to show that there was an unwarranted sentencing

disparity between his sentence and his co-conspirator's sentence. Because the district court did not abuse its discretion in its consideration of the 18 U.S.C. § 3553(a) factors, Aguila-Urbay failed to show that his sentence was unreasonable, and we affirm Aguila-Urbay's sentence.

## Conclusion

Based upon the foregoing and our review of the record and the parties' briefs, we affirm Aguila-Urbay's conviction and sentence.

**AFFIRMED.**