**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2014**

# In the Court of Appeals of Georgia

A14A0270. TAYLOR v. THE STATE.

MCFADDEN, Judge.

After a jury trial, Montrellus Lamar Taylor was convicted of kidnapping and aggravated sodomy. He appeals, arguing that the state failed to prove venue for the aggravated sodomy; that the trial court committed plain error when it instructed the jury on venue; and that the trial court improperly admitted evidence that Taylor previously had broken into the victim's home. We find that the state adequately proved venue and that the trial court's instruction on venue was correct. We also find that the trial court did not abuse his discretion in admitting the prior difficulties evidence. We therefore affirm Taylor's convictions.

Viewed in the light most favorable to the verdict, *Morris v. State*, 322 Ga. App. 682, 683 (1) (746 SE2d 162) (2013), the evidence shows that the victim dated Taylor,

off and on, for a number of years, and they have two children together. Their romantic relationship ended in 2005.

On December 22, 2007, Taylor called the victim and asked her to meet him at a storage unit in Dooly County because he had money for her and bicycles for their children. When the victim arrived at the storage unit, Taylor called her over to his car so she could look at presents in his open trunk. When she walked over, Taylor put a gun to her head and told her to shut up and to get in the trunk. The victim struggled with Taylor, but he choked her until she fell to the ground. He picked her up, threw her into the trunk, and shut the compartment's lid. The victim called her boyfriend on her cell phone and had time to say that Taylor had a gun and had her in the trunk before Taylor, who had been searching the victim's car for her cell phone, opened the trunk and took the phone from her. Taylor then drove off with the victim in the trunk. She attempted to escape and was able to open the trunk, but Taylor was driving so quickly that she could not jump out.

When Taylor realized the victim had opened the trunk, he stopped the car and forced her into the back seat. The victim did not know where they were; all she saw was trees. Taylor drove for another five to ten minutes before stopping. The victim still had no idea where they were, but they remained in a wooded area. When he

stopped the car, Taylor blindfolded and handcuffed the victim and forced her to perform oral sex on him. Afterwards, Taylor removed the victim's blindfold and handcuffs, and they drove away. The victim was crying and hyperventilating.

When the victim's boyfriend received her call, he and his friends, who were also friends of Taylor and the victim, drove to the storage facility. When they arrived, they saw the victim's car but not the victim. One of the friends called the police. The boyfriend and his friends began driving around, looking for the victim. Eventually, some of the friends encountered Taylor's car in Dooly County. Taylor stopped, and the friends rescued the victim from Taylor's car.

When the victim was interviewed by law enforcement officers later that day, she was "visibly shaken," very upset, crying, "visibly distraught," and "huddled in on herself." She still had on her head the mask which Taylor had used to blindfold her.

1. *Venue.*

Taylor argues that the evidence was insufficient to prove venue of the aggravated sodomy. He acknowledges that under OCGA § 17-2-2 (h), if "it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." But, he argues, that statute does not apply

here because the state could have determined the county in which the crime was committed by having the victim retrace the route from the point where she was rescued. A jury's decision on venue must be affirmed if supported by any evidence. Because the jury could have concluded from the evidence that the location of the crime could not be determined, we reject Taylor's argument.

One purpose of OCGA § 17-2-2 (h) "is to provide for establishment of venue in situations in which there is . . . some doubt as to which county was the scene of the crime[.]" *Bundren v. State*, 247 Ga. 180 (1) (274 SE2d 455) (1981) (discussing Code Ann. § 26-302 (h), the former version of the statute). "OCGA § 17-2-2 (h) does not violate the mandate of Art. VI, Sec. II, Par. VI, Ga. Const. 1983 [that criminal cases be tried in the county where the crime was committed]. It merely provides a mechanism by which that mandate can be carried out when the place in which the crime is committed cannot be determined with certainty." *Hinton v. State*, 280 Ga. 811, 815 (2) (631 SE2d 365) (2006) (punctuation omitted).

In this case, the victim testified that she was abudcted in Dooly County. She was in the car's trunk for part of the time that Taylor drove her to the location of the aggravated sodomy. In response to the state's question, the victim testified that she had "no idea" where she was at the time of the sodomy. She was eventually rescued

4

from Taylor's car in Dooly County. This evidence supports the conclusion that the county in which the crime occurred could not be determined with certainty. The state therefore was entitled to rely on OCGA § 17-2-2 (h) to prove venue. Compare *Stockard v. State*, __ Ga. App. __, __ (2) (755 SE2d 548) (2014) ("[Because the [s]tate made no attempt to elicit evidence as to where the crime occurred [through the questioning of witnesses], we are unable to say that the county in which the crime committed 'cannot be determined'" so as to allow state to use OCGA § 17-2-2 (h) to prove venue.) (footnote and emphasis omitted).

This case is distinguishable from the cases Taylor cites. In *Rogers v. State*, 298 Ga. App. 895, 898-899 (3) (c) (681 SE2d 693) (2009), law enforcement officers knew where the offenses were committed. In *Thompson v. Brown*, 288 Ga. 855, 856 (708 SE2d 270) (2011), the state readily could have determined venue "because the informant would have known the general locations where the two [drug] sales occurred and because the [law enforcement] agents knew the exact route that the informant and [the defendant] traveled."

"[V]enue is a question for the jury, and its decision will not be set aside if there is *any* evidence to support it." *Leftwich v. State*, 299 Ga. App. 392, 399 (4) (682 SE2d 614) (2009) (citation and punctuation omitted; emphasis added). There was evidence

5

to support the conclusion that the county in which the crime was committed could not be determined – the victim's testimony that she did not know where Taylor had sodomized her. There was evidence to support the conclusion that the crime might have been committed in Dooly County – evidence that the victim was abducted and rescued there. "Even though the victim was unable to testify with precision in which county the attack took place, she was not required to do so to establish the proper venue. Her testimony established that she was abducted from and returned to [Dooly] County. . . . [T]his was sufficient to establish [Dooly] County as the proper venue." *Arnold v. State*, 284 Ga. App. 598, 600 (1) (645 SE2d 68) (2007).

2. *Jury charge.*

Taylor argues that it was plain error for the trial court to charge the jury on OCGA § 17-2-2 (h). In order to show plain error in the giving of a jury instruction, a defendant must show "that the . . . charge was erroneous, the error was obvious, the . . . charge likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Johnson v. State*, __ Ga. __, __ (2) (__ SE2d __) (Case No. S14A0367, decided June 16, 2014) (citation omitted). Given the evidence detailed above, the trial court did not err, much less commit plain error, in charging the jury on this statute.

6

3. *Evidence of prior difficulties*.

Taylor argues that the trial court abused his discretion by admitting evidence that he had broken into the victim's house two years before this incident. He argues that the trial court's decision not to give a jury instruction on prior difficulites amounted to a finding that the evidence did not meet the proper standard for prior difficulties evidence. The record indicates, however, that the trial court did not give the charge because the state withdrew it, not because the trial court concluded that the evidence should not have been admitted.

Taylor also argues that the evidence was inadmissible, because it did not tend to prove his motive or intent or the state of the relationship between him and the victim, and because there was not a sufficient connection between the break in and the kidnapping or aggravated sodomy. But evidence of a defendant's prior acts toward the victim, "be it a prior assault, a quarrel, or a threat, are evidence of the relationship between the victim and the defendant and may show the defendant's motive, intent, and bent of mind in committing the act against the victim which results in the charges for which the defendant is being prosecuted." *Thompson v. State*, 295 Ga. 96, 102 (3) (b) (__ SE2d __) (2014) (citation and punctuation

7

omitted).[1] Moreover, prior difficulties "do not implicate independent acts or occurrences, but are connected acts or occurrences arising from the relationship between the same people[.] . . . Thus, the admissibility of evidence of prior difficulties does not depend upon a showing of similarity to the crime for which the accused is being tried." *Dixon v. State*, 275 Ga. 232, 232-233 (2) (564 SE2d 198) (2002) (citation and punctuation omitted). Taylor has not shown that the trial court abused his discretion in admitting this evidence.

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*

---

[1]This case, like *Thompson*, was tried under Georgia's old Evidence Code. Under the new Evidence Code, which applies to trials beginning on or after January 1, 2013, the admissibility of this sort of "[e]vidence of other crimes, wrongs, or acts" is governed by OCGA § 24-4-404 (b).