**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 9, 2015**

# In the Court of Appeals of Georgia

A15A0545. FREEMAN v. THE STATE.

MCMILLIAN, Judge.

Following a jury trial in September 2013, Emmanuel Philemon Freeman was convicted of two counts of cruelty to children in the second degree and two counts of cruelty to children in the first degree and was sentenced to twenty years, seven to serve.[1] Freeman timely filed a motion for new trial, as amended, which the trial court denied. On appeal, Freeman challenges the sufficiency of the evidence as to each conviction and further asserts that the trial court erred in denying his motion for a mistrial and that the State failed to prove venue on several counts. Finding no error, we affirm.

---

[1] The jury acquitted Freeman on four counts of aggravated battery and two additional counts of cruelty to children in the first degree.

Viewed in the light most favorable to the jury's verdict,[2] the evidence shows that E. F. was born to Freeman and Averielle Outler on March 25, 2009.[3] At the time of his one-month checkup on May 6, 2009, his pediatrician, Iyer Rajamani, found that he was in good health, with normal eyesight and a normal head circumference of 40 cm. When Dr. Rajamani next examined E. F., on July 9, 2009 during an appointment for routine vaccinations, she immediately saw that his head was "really big" and measured the circumference as 49 cm. Because the growth of E. F.'s head was "definitely unusual" and he had a "sunset appearance," which is caused by excess cerebrospinal fluid pushing the eyeballs downward, she instructed Freeman to take E. F. straight to a children's hospital to determine the cause of the swelling.

At the hospital, doctors confirmed that E. F. had excess fluid on his brain and performed surgery to insert a shunt to relieve the pressure on his brain. Dr. Stephen Messner, a pediatrician and expert in child abuse evaluations, was called to evaluate E. F. As part of the work-up, the hospital completed a skeletal survey of E. F., which included an x-ray of all of his bones. The x-rays showed a healing fracture of four ribs

[2] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] Outler was tried along with Freeman and convicted of one count of cruelty to children in the second degree and two counts of cruelty to children in the first degree.

on E. F.'s left side, a healing fracture of his left femur, and a healing fracture of his right tibia. Doctors also concluded, based on MRI results, that E. F.'s brain had atrophied, which would result in permanent brain damage, and that his optic nerves and retina were damaged. Dr. Messner found no evidence of infection that could have caused any of E. F.'s injuries, and both Freeman and Outler indicated to him that they were not aware of any accidents that could have caused the injuries.

Based on the constellation of injuries, Dr. Messner concluded that E. F.'s injuries were caused by physical abuse. As a result, E. F.'s older sister, O. F., who was 14 months old at the time, was also evaluated. X-rays revealed that O. F. also had fractures of two ribs on her left side that were in the healing stage. Detective James Watson of the Clayton County Police Department was called to Scottish Rite Hospital on July 17, 2009, where he spoke with Outler, who told him that she had noticed E. F.'s head swelling approximately three weeks before the July 9 appointment with Dr. Rajamani. She, her husband, and their two children had been living at an apartment in Clayton County since April 2009 and she could think of no accidents or illnesses that could have caused E. F.'s injuries. She also confirmed that she and her husband were their only caretakers and that they did not use babysitters or family members to assist them in caring for the children.

3

Freeman also spoke with Detective Watson and told him that he had also noticed the swelling of E. F.'s head sometime in June and that he and Outler were the only individuals caring for their children. Freeman denied any history of accident or trauma that would explain E. F.'s injuries but admitted that he "plays too rough" with his children and "doesn't know his own strength." Based on Watson's interviews with doctors and the defendants, E. F. and O. F. were placed in protective custody. Freeman and Outler were charged with four counts of first degree cruelty to children (Counts IV, VI, VIII, and X), two counts of second degree cruelty to children (Counts I and II), and four counts of aggravated battery (Counts III, V, VII, and IX) stemming from their abuse of E. F. and O. F. and their subsequent failure to seek medical attention for their children.

At trial, Dr. Messner explained that the children's rib fractures were not the result of normal handling and that it would require "significant force" to cause them to crack, particularly since infants' bones are typically more pliable than those of adults. In addition, he opined that E. F.'s injuries were most likely caused by "shaken baby syndrome," which occurs when a baby is grasped, squeezed, and then shaken back and forth, causing their arms and legs to whip around and the brain to rotate within the skull. Dr. Messner also testified that, due to the presence of callus or new

4

bone being formed, all of the fractures had to have occurred at least one to two weeks prior to the x-rays, and based on the parents' statements, the various injuries likely occurred sometime in June. And in his expert opinion, E. F.'s prognosis would have been better if he had been brought to the hospital at that time rather than in July. Freeman testified at trial in his own defense and denied shaking or harming either of his children. The jury found Freeman guilty on four counts: Count I (cruelty to children in the second degree for failing to seek medical attention for E. F. after noticing his head swelling); Count II (cruelty to children in the second degree for fracturing O. F.'s ribs); Count VIII (cruelty to children in the first degree for fracturing E. F.'s ribs); and Count X (cruelty to children in the first degree for fracturing E. F.'s leg).

1. We first address Freeman's challenge as to the sufficiency of the evidence. "When an appellant challenges the sufficiency of the evidence to support his conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted.) *Salazar v. State*, 326 Ga. App. 627, 627 (1) (757 SE2d 224) (2014). And "[t]he appellant no longer enjoys a presumption of innocence, and an appellate court

5

determines only the legal sufficiency of the evidence and does not weigh the evidence or assess the credibility of witnesses." (Citation omitted.) Id.

A person commits the offense of cruelty to children in the first degree "when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (b). A person commits the offense of cruelty to children in the second degree "when such person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70 (c). Criminal negligence is defined as "an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby." OCGA § 16-2-1 (b).

(a) As to Count I, Freeman argues that he had no indication in June 2009 that anything was wrong with the size of E. F.'s head and that photographs from July 2009 presented by the State did not show a severe abnormality of the head that would cause a normal person to suspect that the child had a serious condition. However, the State presented evidence, through the testimony of Detective Watson, that Freeman was aware of the infant's head swelling in June 2009. And the jury was free to find the testimony of Detective Watson credible and to reject Freeman's testimony. See, e.g., *Wheeler v. State*, 293 Ga. 247, 248 (744 SE2d 792) (2013); *Nicely v. State*, 291 Ga.

6

788, 790 (1) (733 SE2d 715) (2012) ("it is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient") (citation and punctuation omitted). We therefore find that the State presented sufficient evidence to support his conviction as to Count I. See *Morast v. State*, 323 Ga. App. 808, 812 (748 SE2d 287) (2013) (evidence sufficient to support conviction for cruelty to children in the first degree where defendant knew for several days child was suffering from dog and human bites and excessive vomiting but did not seek medical attention).

(b) With respect to Counts II, VIII, and X, Freeman asserts that the State presented no evidence as to how these injuries occurred or that he was responsible for them. However, Dr. Messner testified that the location and nature of the rib fractures show – with "very high specificity" – that the injuries were the result of child abuse, specifically from a "squeezing" force. He also explained that leg fractures in a non-mobile infant with no history of accidental trauma is diagnostic of child abuse. The evidence further showed that Freeman and Outler were the sole caretakers for the children, and Freeman testified that Outler would never harm the children. Freeman nonetheless argues that the State presented only circumstantial evidence and points

7

to his testimony that perhaps O. F.'s ribs were fractured when he fell while holding her one time as a reasonable hypothesis that the State failed to exclude.

"Certainly, a conviction based upon circumstantial evidence requires that the proven facts not only be consistent with the hypothesis of guilt, but that they exclude every other reasonable hypothesis save that of the guilt of the accused." *Dyer v. State*, 295 Ga. 173, 176 (1) (758 SE2d 301) (2014). "However, whether the evidence does exclude every other reasonable hypothesis is ordinarily a question for the jury, and this finding by the jury will not be disturbed unless the verdict is unsupportable as a matter of law." Id. Given the record before us, including Dr. Messner's testimony that he would not expect to see this type of injury as the result of an accident, we cannot say that the jury's guilty verdicts were unsupportable as a matter of law. See *Hinds v. State*, 296 Ga. App. 80, 82-83 (1) (673 SE2d 598) (2009) (evidence, including that defendant was involved in abuse of both children, was sufficient to support a conviction of cruelty to children where child sustained significant injuries over a period of time while in defendant's care); *Thompson v. State*, 262 Ga. App. 17, 18-19 (1) (585 SE2d 125) (2003) (evidence, though circumstantial, was sufficient to sustain defendants' convictions for cruelty to children where there was evidence that the child had suffered multiple bone fractures while in the care of the defendants, they

8

did not seek prompt medical treatment, and they were evasive in explaining the injuries).

2. Freeman also contends that the trial court committed reversible error when it permitted the State to "parade[]" E. F. in front of the jury. We review a trial court's evidentiary ruling under an abuse of discretion standard. See *Williams v. State,* 328 Ga. App. 876, 880 (1) (763 SE2d 261) (2014). At trial, E. F.'s foster mother testified regarding his condition, including the fact that he was not able to talk, walk, feed, or toilet himself at four years old. The State asked her to step down and bring E. F. into the courtroom. Over the defendants' objections, the trial court allowed her to do so.[4] After she wheeled E. F. into the courtroom in a stroller, the State asked her one final question regarding her care of E. F. The record reveals that during this brief questioning, E. F. "groaned several times out loud." Freeman asserts that the State presented E. F. to the jury not as evidence but to inflame the jury and prejudice it against Freeman. He further argues that because E. F. could not be called as a witness due to his age and medical condition, and the State had already presented evidence

---

[4] The trial court also denied defendants' subsequent motion for a mistrial on the same grounds.

regarding his condition, "it was not necessary to parade him in front of the jury like some freak at a side show."[5]

Because Freeman's trial took place after January 1, 2013, Georgia's new Evidence Code applies.[6] Under our new Code, relevant evidence is broadly defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. However, even "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." OCGA § 24-4-403 (mirroring Federal Rule of Evidence 403).

Our Supreme Court has recently addressed the balancing test presented in OCGA § 24-4-403:

> Unfortunately, there is no mechanical solution for this balancing test. Instead, a trial court must undertake in each case a considered evaluation of the proffered justification for the admission of such evidence and

---

[5] We note that there is nothing in the record to indicate that the State acted in any way to treat E. F. in a disrespectful manner.

[6] See Ga. L. 2011, pp. 99, 214, § 101.

make an independent determination of whether the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

(Citations omitted.) *State v. Jones*, __ Ga. __ (3) (Case No. S14G1061, decided June 1, 2015). The Supreme Court also noted with approval several Eleventh Circuit cases illustrating that the trial court's discretion to exclude evidence under the balancing test of Rule 403 "is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence" and that "in close cases, balance under Rule 403 should be struck in favor of admissibility."[7] (Citations and punctuation omitted). Id.

Here, evidence of E. F.'s condition is clearly relevant to the State's charges, including that Freeman caused E. F. "bodily harm . . . by rendering his brain, a member of his body, useless by violently shaking him, causing permanent brain damage." See *Smith v. State*, 246 Ga. App. 191, 193-194 (3) (539 SE2d 881) (2000)

---

[7] See Ga. L. 2011, p. 99, § 1 (stating the legislative intent to adopt the Federal Rules of Evidence as interpreted by the United States Supreme Court and Circuit Courts of Appeals, as of January 1, 2013, with any conflicts among the Circuit Courts of Appeals to be resolved by following the Eleventh Circuit Court).

(injuries sustained in aggravated assault are always relevant and trial court did not err in permitting victim to display his injuries); *Prayor v. State*, 217 Ga. App. 56, 58 (4) (456 SE2d 664) (1995) (rejecting defendant's contention that the paralyzed victim should have been forced to testify via camera so that his injuries would not be apparent to the jury); *Cail v. State*, 194 Ga. App. 584, 584-585 (1) (391 SE2d 444) (1990) (trial court did not err in permitting the State to exhibit child victim to the jury for the purpose of displaying his scar from the assault despite the child's tender age and lack of any actual dispute over the nature of his injuries).

And although viewing E. F. in person may have been prejudicial to Freeman, we cannot say that the probative value of this evidence was substantially outweighed by the danger of unfair prejudice. As the Eleventh Circuit has noted, "in a criminal trial relevant evidence is inherently prejudicial; it is only when *unfair* prejudice *substantially* outweighs probative value that the rule permits exclusion." (Citations omitted; emphasis in original.) *United States v. King*, 713 F2d 627, 631 (III) (11th Cir. 1983). Thus, "[t]he major function of Rule 403 is to exclude evidence of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citation and punctuation omitted.) *United States v. Aguila-Urbay,* 480 Fed.

Appx. 564, 567 (11th Cir. 2012). And we do not find that direct evidence of the permanent nature of E. F.'s injury was of scant probative force.

Furthermore, we also agree with the State that pursuant to OCGA § 17-17-9, referred to as the "Crime Victims' Bill of Rights," E. F. had the right to be present at the trial. The Crime Victims' Bill of Rights provides in part that "[a] victim has the right to be present at all criminal proceedings in which the accused has the right to be present."[8] OCGA § 17-17-9 (a). See also *Nicely*, 291 Ga. at 795 (2) ("the Crime Victims' Bill of Rights promotes legitimate state interests, namely the interest of the State in according to crime victims the same right to be present as the Constitution accords to the accused"). This enumeration of error provides no basis for a new trial.

3. In his sixth, seventh, and eighth enumerations of error, Freeman asserts that the State failed to prove venue beyond a reasonable doubt as to Counts II, VIII, and X. Specifically, he argues that the State provided no evidence that E. F. or O. F. were injured in their Clayton County residence. OCGA § 17-2-2 (a) requires that all "[c]riminal actions shall be tried in the county where the crime was committed, except as otherwise provided by law." However, "[i]f in any case it cannot be determined

---

[8] For purposes of this statute, a victim is defined as "[a] person against whom a crime has been perpetrated or has allegedly been perpetrated." OCGA § 17-17-3 (11) (A).

13

what county a crime was committed, it shall be considered to have been committed in any county in which the evidence shows beyond a reasonable doubt that it might have been committed." OCGA § 17-2-2 (h).

This Court has explained that "[t]he State may use both direct and circumstantial evidence to prove venue." (Citation omitted.) *Jones v. State*, 329 Ga. App. 439, 444 (1) (b) (765 SE2d 639) (2014). And "[v]enue is a question for the jury, and its decision will not be set aside if there is *any* evidence to support it."[9] (Citation omitted; emphasis in original.) *Taylor v. State*, 328 Ga. App. 551, 554 (1) (759 SE2d 892) (2014).

Here, the evidence showed that Freeman and Outler moved with their children to an apartment in Clayton County in April 2009 and that they were the children's sole caretakers. And Dr. Messner testified that, because the bone fractures identified in E. F. and O. F. were in the "healing phase," they must have occurred at least one to two weeks in the past and at most "a few months" in the past. Thus, there was

---

[9] The record reveals that the trial court correctly charged the jury that venue is "a jurisdictional fact that must be proved by the State beyond a reasonable doubt as to each crime charged in the indictment just as any element of the offenses." See *Lanham v. State*, 291 Ga. 625, 626-627 (3) (732 SE2d 72) (2012) (urging "trial court to give a separate charge on venue to encourage prosecutors to make certain they prove venue and to alert juries to their specific role in determining venue").

evidence to support the jury's conclusion that the children's injuries occurred in Clayton County. See *Glenn v. State*, 278 Ga. 291, 295-296 (2) (602 SE2d 577) (2004) (medical evidence as to when the child's injury most likely occurred, along with evidence as to where the child was staying at the time, provided sufficient evidence of venue as to conviction for cruelty to children); *Taylor*, 328 Ga. App. at 554 (1) ("Even though the victim was unable to testify with precision in which county the attack took place, she was not required to do so to establish the proper venue. Her testimony established that she was abducted from and returned to Dooly County. This was sufficient to establish Dooly County as the proper venue.") (citation and punctuation omitted). Accordingly, the trial court did not err in denying Freeman's motion for new trial.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*