309 Ga. 882
FINAL COPY

S20A1014.  BRIDGEWATER v. THE STATE.

BLACKWELL, Justice.

Andre Bridgewater was tried by a Fulton County jury and convicted of murder and other crimes in connection with the fatal shooting of Myron Short. Bridgewater appeals, contending that the evidence is insufficient to sustain his convictions and that the trial court erred when it admitted the prior inconsistent statements of a witness.[1]  Finding no error, we affirm.

---

[1] Short was killed on January 20, 2018. In April 2018, a grand jury indicted Bridgewater, charging him with murder with malice aforethought, two counts of murder in the commission of a felony (predicated on aggravated assault and possession of a firearm during the commission of a felony, respectively), aggravated assault upon Short, aggravated assault upon Uylesse Davis, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Bridgewater was tried in September 2018, and the jury found him guilty on all counts. The trial court sentenced Bridgewater to imprisonment for life for malice murder, a consecutive term of imprisonment for twenty years for aggravated assault upon Davis, a consecutive term for five years for possession of a firearm during the commission of a felony, and a concurrent term for five years for possession of a firearm by a convicted felon. The other counts merged or were vacated by operation of law. Bridgewater filed his initial motion for new trial in November 2018, and he amended the motion in May 2019. (Bridgewater's initial motion for new trial was untimely, but the trial court later granted his motion for an

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows the following. On the evening of January 18, 2018, two days before the shooting, Bridgewater parked his "tan" or "gold" Lincoln Navigator at a Chevron gas station in Union City and went inside the convenience store to purchase some cigars. While Bridgewater was inside the store, several men got into the Navigator and drove off. Bridgewater ran out of the store as the men were driving away and attempted to stop them, but he was unsuccessful.[2] An employee at the Chevron grabbed the store phone and offered it to Bridgewater, asking if he wanted to call the police, but Bridgewater refused and ran across the street.

A witness who worked at a nearby Citgo gas station testified that, just after 9 p.m. on January 18, Bridgewater came into the

out-of-time appeal, which cured this jurisdictional deficiency. See Collier v. State, 307 Ga. 363, 371 (2) (834 SE2d 769) (2019)). After a hearing, the trial court denied Bridgewater's motion for new trial in August 2019. Bridgewater timely filed a notice of appeal, and his case was docketed to the April 2020 term of this Court and submitted for a decision on the briefs.

[2] The stolen Navigator, which actually belonged to the mother of Bridgewater's girlfriend, was found abandoned in the middle of a road two days after the theft.

Citgo "hysterical" and "upset" and said that "some guys" stole his car. The employee advised him to call the police, but Bridgewater declined and said that he would "deal with it." Bridgewater also said that he knew the people who took the car and that he was "going to blast them" because the car was his livelihood and only means of transportation. Surveillance video from the Citgo shows Bridgewater wearing a black, white, and red Puma jacket.

On January 20, the police responded to a shooting at the same Chevron gas station from which the Navigator had been stolen two days earlier. The shooting victim, Short, was a part-time employee of a pizza-and-wings restaurant that adjoined the gas station. One witness to the shooting, Troy Williams, provided a description of the suspect's clothing, and the police obtained surveillance footage from a security camera at the Chevron. The footage shows that, at 7:12 p.m., a person entered the store wearing a hood and a black jacket with a small white label at the base of the neck. A detective who viewed the video described that label as a "reflective cross." The man walked out a minute later, and after another minute, other people

inside the store reacted to something happening outside. The description of the shooter provided by Williams matched the appearance of the man shown on the Chevron surveillance video.

Williams testified that, just before the shooting, he saw Short walk out of the restaurant holding some pizza boxes intended for delivery. One of Short's co-workers, Uylesse Davis, was standing near the entrance to the restaurant, holding the door open for Short. A man then exited the Chevron gas station, wearing a "black coat with a hood on it." The man grabbed Davis and said, "Y'all n****s know where my car at?" Davis "hollered" and replied, "It wasn't me." The man then approached Short, grabbed him, and asked, "You know where my s**t at?" The man then shot Short. Williams did not see the shooter's face, but he testified that Davis saw the shooter's face. Williams's testimony was corroborated in part by Davis, who testified that he was standing next to the restaurant when a man

approached him, pointed a gun at him, and then "went over and shot [Short]."[3]

One of Davis's acquaintances, Rashawn Thornton, arrived on the scene shortly after the shooting. Davis refused to talk to the police directly, so Thornton acted as an intermediary between Davis and the police. Thornton testified that Davis told him that a man "walked up to him and put a gun on him . . . and was like he wants his truck, y'all stole my truck." Davis denied stealing any truck and asked what kind of truck the man was looking for. The man responded that he was looking for a "gold Navigator." When Short walked out the door holding a pizza, the man pointed the gun at Short and said, "Oh, you was with him," and then he shot Short. Thornton testified that he showed Davis a photo of the suspect taken from the Chevron surveillance video (that an officer provided), and Davis identified the man in the photo "as the guy that shot [Short]."

---

[3] Some of Davis's testimony, however, was inconsistent with the other evidence, as discussed in Division 3. Most notably, Davis testified that the shooter was *not* Bridgewater. The State's theory was that Davis lied at trial because he was intimidated by Bridgewater. There was evidence that Davis and Bridgewater were in the same holding cell shortly before trial.

Detective Twanesa Howard testified that Davis was reluctant to speak to her at the scene, but she interviewed him later at Short's mother's house. During the interview, Davis was "very standoffish" and "didn't want to go into detail about anything." He said he was afraid to speak because "he didn't know who [the shooter] knew." Nevertheless, Davis told the detective that, a few days before the shooting, "some people" stole a Lincoln Navigator from the Chevron gas station when the driver went inside the store, and that the driver "was the same guy that came back." According to the detective, Davis said that "the same guy who had his vehicle stolen came back and shot [Short]." Detective Howard further testified that, in describing the shooting, Davis said that the shooter came up from behind and said to him, "Where is my s**t at? I know you know where my s**t is." Davis told Detective Howard that the shooter was referring to the stolen Navigator. Davis also told the detective that the shooter's firearm was a "black handgun" similar to a "Sig 9." A firearm expert testified that a "Sig 9" is a 9mm pistol.

Further evidence showed that, several minutes after the shooting, a man entered a Family Dollar store near the Chevron. The man was wearing a black jacket with a reflective cross on the top of the back, and underneath the jacket, he wore a white, black, and red Puma jacket that appears identical to the one Bridgewater was wearing on the Citgo surveillance video (shortly after his car was stolen). An assistant manager working at the Family Dollar testified that the man was acting suspiciously, pacing back and forth in the middle of the aisle. This behavior prompted the assistant manager to call the police. The man purchased a soft drink and eventually exited the store, but he left without the black outer jacket. A few days later, one of the store's employees found, in the back of the store, a black jacket with a reflective cross on the top back. The employee put on the jacket, thinking it belonged to a co-worker, and found a 9mm bullet in its pocket.

Back at the scene of the shooting, the police found a 9mm live round and a 9mm spent casing. The spent casing was of the same caliber and from the same manufacturer as the bullet found in the

black jacket at the Family Dollar. An autopsy revealed that Short died from a single gunshot wound that caused vascular injury. Fragments of the bullet were recovered from Short's body, and that fragmented bullet was determined to have been fired from the same firearm as the 9mm casing found at the scene. A search of a phone belonging to Bridgewater's girlfriend—with whom he resided—revealed a number of shooting-related internet searches beginning on the evening of January 20, including "do all shootings make the news."[4]

Bridgewater first contends that the evidence presented at trial is insufficient to sustain his convictions because, he says, this evidence is entirely circumstantial and does not exclude every reasonable hypothesis of innocence.[5] We disagree. Among other things, the evidence included testimony that Bridgewater appeared

_____

[4] To support the felon-in-possession charge, the State presented evidence that Bridgewater was convicted of a drug-related felony in 2005.

[5] OCGA § 24-14-6 provides: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

very upset after the theft of his Navigator but refused to call the police and threatened to "blast" the perpetrators. An eyewitness—Williams—testified that the shooter asked, "where my car at?" before pulling the trigger. And Davis's out-of-court statements, as recounted by Thornton and Detective Howard, directly linked Bridgewater to the shooting by showing that the shooter was the same person whose Navigator was stolen at the Chevron two days earlier. Although Davis testified that Bridgewater was not the shooter, the jury was free to reject his testimony and to credit his prior statements instead. See Nicholson v. State, 307 Ga. 466, 472 (2) (837 SE2d 362) (2019) ("[T]he jury was authorized to believe and rely on [a witness's] prior statements and photo lineup identification rather than his trial testimony . . . ."); Graham v. State, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) ("[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (Citation and punctuation omitted)). We also conclude that the evidence presented

at trial was sufficient for purposes of constitutional due process to authorize a rational trier of fact to find beyond a reasonable doubt that Bridgewater was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Bridgewater also contends that the trial court erred when it admitted Davis's out-of-court statements—via the testimonies of Detective Howard and Thornton—that linked the shooter to the victim of the vehicle theft. Bridgewater argues that the State failed to lay a proper foundation for the admission of these statements under OCGA § 24-6-613 (b). That statute provides, in relevant part:

> [E]xtrinsic evidence of a prior inconsistent statement by a witness shall not be admissible unless the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require.

Id.[6] "We review a trial court's evidentiary rulings under an abuse of discretion standard of review." Keller v. State, __ Ga. __ (8) (842 SE2d 22, 34) (2020) (citation and punctuation omitted).

Bridgewater first argues that Davis's out-of-court statements to Detective Howard actually were not "inconsistent" with his trial testimony because Davis testified that he told the detective about "a car that got stolen."[7] The pertinent inconsistency, however, relates not to whether Davis mentioned a stolen car to Detective Howard, but to whether Davis observed a connection between the shooter and the victim of the vehicle theft. Davis testified at trial that he saw the Navigator being stolen but did not see the driver of the vehicle that day. Davis also testified that he did not see the shooter prior to the

---

[6] If an out-of-court statement is admissible as a "prior inconsistent statement" under OCGA § 24-6-613 (b), it is not considered hearsay where, as here, "the declarant testifies at the trial or hearing [and] is subject to cross-examination concerning the statement." OCGA § 24-8-801 (d) (1) (A).

[7] Specifically, Davis testified that Detective Howard did not ask him "anything about a vehicle that was stolen" on January 18, but that he might have volunteered this information, though he could not "remember." When the prosecutor asked, "Tell us about what it was you told [Detective Howard] about this vehicle," Davis replied, "It was a car that got stolen."

day of the shooting, that the shooter did not say anything to him or Short, that he (Davis) did not give Detective Howard any descriptions of the shooter, and that he did not tell her anything the shooter said. This testimony clearly was inconsistent with Davis's out-of-court statements (as recounted by Detective Howard) that the shooter was the same person whose Navigator was stolen and that the shooter mentioned the stolen vehicle before killing Short. Accordingly, Bridgewater has not shown any violations of OCGA § 24-6-613 (b) with respect to Davis's out-of-court statements to Detective Howard.

Bridgewater further challenges Davis's out-of-court statements to Thornton (as recounted by Thornton), arguing that the State failed to ask Davis any specific questions about those alleged statements and did not identify the substance of those statements. As a result, Bridgewater argues, Davis was never "afforded an opportunity to explain or deny" his prior inconsistent statements to Thornton and the defense was unable to interrogate Davis about them. See OCGA § 24-6-613 (b). We disagree. On direct examination,

Davis expressly denied knowing Thornton and denied ever speaking to him. Although Davis appeared to contradict himself by saying that "Rashawn gave [him] a ride" to Short's mother's house, the prosecution later asked whether Davis "recall[ed] any conversation with Rashawn Thornton at all," and Davis replied, "No." Davis's unambiguous denial that he had ever spoken with Thornton—as well as his assertion that he did not recall ever speaking with him—obviated the need for the prosecutor to ask Davis about specific statements he made to Thornton and provided sufficient foundation for the State to present extrinsic evidence of such statements. See Hood v. State, 299 Ga. 95, 99 (2) (786 SE2d 648) (2016) ("The failure of a witness to remember making a statement, like the witness's flat denial of the statement, may provide the foundation for calling another witness to prove that the statement was made."). See also Murdock v. State, 299 Ga. 177, 179 (4) (787 SE2d 184) (2016) (holding that a witness's out-of-court statement about a shooting was admissible as a prior inconsistent statement under OCGA § 24-6-613 (b) where the witness testified that she "could not recall the

details of the shooting itself or the content of her statement").[8] For these reasons, the trial court did not abuse its discretion when it admitted evidence of Davis's out-of-court statements about the shooting.

Judgment affirmed. All the Justices concur, except Warren, J., not participating.

Decided September 28, 2020.

Murder. Fulton Superior Court. Before Judge Ellerbe.
*Stephen R. Scarborough, Jessica A. Seares, Margaret E. Bullard*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.

---

[8] We note that, as with Thornton, Davis had an "opportunity to explain or deny" his prior inconsistent statements to Detective Howard, and Bridgewater had an "opportunity to interrogate" Davis about those statements. See OCGA § 24-6-613 (b); Hood, 299 Ga. at 99 (2).