**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**August 26, 2022**

# In the Court of Appeals of Georgia

A22A0642. ROZIER v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Dennis Leon Rozier was convicted of and sentenced on two counts of aggravated cruelty to animals. OCGA § 16-12-4 (d). Rozier argues on appeal that the trial court erred by admitting into evidence a video recording of an eyewitness's statement to police, but the trial court properly admitted this evidence as a prior inconsistent statement under OCGA § 24-6-613 (b). So we affirm the judgment of conviction. Rozier also argues, and the state concedes, that the trial court should have merged the convictions for sentencing purposes. We agree, so we vacate the sentence and remand the case for resentencing.

1. *Facts and procedural background.*

The trial evidence showed that, while visiting a friend at a motel, Rozier engaged in a physical altercation with his dog, a six-month old pit bull terrier. This incident left the dog badly injured, with a broken jaw and a broken hip that required several surgeries and a lengthy period of rehabilitation. The state charged Rozier with two counts of aggravated cruelty to animals, alleging that Rozier had knowingly and maliciously caused physical harm to the dog by rendering useless both the dog's jaw and its hip.

Defense counsel presented a justification defense at trial, arguing that Rozier had acted to protect his friend, Ernest Powell, because the dog had unexpectedly attacked Powell. See OCGA § 16-12-4 (h) (1) ("a person shall be justified in injuring . . . an animal when and to the extent that he or she reasonably believes that such act is necessary to defend against an imminent threat of injury or damage to any person . . .").

Powell's trial testimony supported this defense. He testified:

[Rozier] woke me up, knocked on the door [of the motel room]. I went to the door to let him in, and I didn't see the dog. And so when I went to sit down, the dog tried to attack me. And so Mr. Rozier, he intervened and got in the way and tried to block the dog. So the dog started growling and messing with him. And anyway, so the altercation went on from there.

2

Powell further testified: "I don't know what was wrong with the dog. He just went haywire. . . . [Rozier] was trying to discipline the dog or whatever, you know. He got the dog away from me because he kept launching at me." He stated that Rozier "got in the middle of me and the dog and he, you know, pushed the dog away from me. But the dog kept trying to lunge at me. And so that's when . . . it bit at him." And Powell stated that "the dog kept coming back and lunging at me, but [Rozier] kicked the dog. And so I was out of the way. It was him and the dog."

Powell gave a very different account of the incident shortly after it happened, when he was interviewed by police at the scene. He stated that he had been asleep in the motel room when he awoke to find Rozier and the dog "tussling." He heard the dog growl at and bite Rozier and he heard Rozier kick the dog. In Powell's words, "the dog bit [Rozier] and he just nutted up on the dog," meaning that he "started kicking the dog and stuff." This went on for about 10 minutes, with Rozier kicking, punching, and stomping on the dog. After telling Rozier to stop, Powell "just sat down and just watched it."

Powell's statement to the police was recorded, and over Rozier's objection the trial court allowed the state to play that video recording to the jury on the ground that it was a prior inconsistent statement.

3

The jury found Rozier guilty on both counts and the trial court entered a judgment of conviction and sentenced Rozier on both counts.

2. *Admission of the video recording of Powell's statement.*

Rozier argues that the trial court erred by admitting the video recording of Powell's statement because the statement was inadmissible hearsay. We find no abuse of discretion. See *Bridgewater v. State*, 309 Ga. 882, 886 (2) (848 SE2d 865) (2020) (applying abuse-of-discretion standard to review trial court's admission of extrinsic evidence of a prior inconsistent statement).

Pertinently, "[a]n out-of-court statement shall not be hearsay if the declarant testifies at the trial or hearing, is subject to cross examination concerning the statement, and the statement is admissible as a prior inconsistent statement . . . under Code Section 24-6-613 (b). . . ." OCGA § 24-8-801 (d) (1) (A). Under OCGA § 24-8-801 (d) (1) (A), "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes." *Esprit v. State*, 305 Ga. 429, 437 (2) (c) (826 SE2d 7) (2019) (citations and punctuation omitted). See also *Bullard v. State*, 307 Ga. 482, 484-485 (1) (837 SE2d 348) (2019). Because Powell testified at trial and was available for cross-examination, the video recording of his statement to

4

police was admissible as substantive evidence under OCGA § 24-8-801 (d) (1) (A) so long as it was a prior inconsistent statement under OCGA § 24-6-613 (b). Cf. *McGarity v. State*, 311 Ga. 158, 164 (3) (856 SE2d 241) (2021) (holding that the admissibility of out-of-court statements as prior consistent statements under OCGA § 24-6-613 (c) was dispositive in determining whether the statements fell within OCGA § 24-8-801 (d) (1) (A), where the statements had been made by witnesses who testified at trial and were available for cross-examination).

"On the issue of admitting extrinsic evidence of a witness's prior inconsistent statement, OCGA § 24-6-613 (b) [of our new Evidence Code] substantially adopted the language of Federal Rule of Evidence 613 (b) as it read in 2011[.]" *Hood v. State*, 299 Ga. 95, 98-99 (2) (786 SE2d 648) (2016). Where a Federal Rule of Evidence uses materially identical language to a rule in our new Evidence Code, "we look to federal appellate precedent until a Georgia appellate court decides the issue under the new Code." *State v. Almanza*, 304 Ga. 553, 558 (2) (820 SE2d 1) (2018). See also *Hood*, 299 Ga. at 99 (2). So we no longer look to decisions under our old Evidence Code on this particular issue.

The trial court did not abuse her discretion in admitting Powell's prior statement to police under OCGA § 24-6-613 (b). Under OCGA § 24-6-613 (b),

5

extrinsic evidence of a witness's prior inconsistent statement may be admitted if "the witness is first afforded an opportunity to explain or deny the prior inconsistent statement and the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require." OCGA § 24-6-613 (b). See *Neloms v. State*, 313 Ga. 781, 787 (4) (a) (873 SE2d 125) (2022).

Contrary to Rozier's argument, the statement was inconsistent with Powell's trial testimony. Although aspects of the two statements could be harmonized, at their core the two statements told very different narratives: the former depicted Powell waking up to find Rozier fighting with the dog after the dog bit Rozier; the latter depicted Rozier intervening when the dog unexpectedly attacked Powell after Powell let Rozier and the dog into his motel room. See generally *Bridgewater*, 309 Ga. at 886 (2) (when analyzing whether two statements are inconsistent for purposes of OCGA § 24-6-613 (3), we look to the "pertinent inconsistency").

In addition, Powell was given an opportunity to explain or deny his prior statement before the trial court admitted it into evidence. Powell admitted to making the prior statement and explained that he did not tell the police that the dog attacked him because he did not want to "get involved." But Powell also equivocated about his

6

prior statement and testified that he did not completely recall aspects of it. "A witness's failure to remember making a statement may provide the foundation for offering extrinsic evidence to prove that the statement was made[,]" *London v. State*, 308 Ga 63, 67 (3) (a) (838 SE2d 768) (2020) (citation and punctuation omitted), and our Supreme Court has applied this rule where, as here, a witness does not deny giving a police interview but does not remember aspects of the interview. See *Thompson v. State*, 304 Ga. 146, 150-151 (6) (816 SE2d 646) (2018) ("Given [a witness's] inconsistent testimony at trial and her convenient memory lapses about the portions of her conversation with the police that implicated Appellant, her earlier statements were not hearsay but rather were properly admitted as prior inconsistent statements."). See also *Brewner v. State*, 302 Ga. 6, 17 (V) (804 SE2d 94) (2017) (finding no error in admission of prior inconsistent statement where witness, when asked to explain why the statement differed from her trial testimony, stated that she was "extremely tired and under the influence of drugs" when she gave the statement).

Finally, during trial Rozier's counsel cross-examined Powell. While Rozier argues that he was not given an opportunity to interrogate Powell before the trial court admitted the evidence, the timing of his cross-examination did not run afoul of the plain language of OCGA § 24-6-613 (b). The statute requires, for admission of

7

a prior inconsistent statement, that "the witness is *first* afforded an opportunity to explain or deny the prior inconsistent statement *and* the opposite party is afforded an opportunity to interrogate the witness on the prior inconsistent statement or the interests of justice otherwise require." OCGA § 24-6-613 (b) (emphasis supplied). As seen in the grammatical structure of this sentence, the requirement that something occur "first" only applies to the witness's opportunity to explain or deny the statement, not to the opposite party's opportunity to interrogate the witness. Because Rozier had the opportunity to interrogate Powell about his statement, OCGA § 24-6-613 (b)'s requirement was met, even though this cross-examination occurred after the evidence was admitted.

For these reasons, the prior inconsistent statement was admissible both as substantive evidence and to impeach Powell, and "the trial court did not abuse [her] discretion in admitting the recording of [Powell's] prior statement to police." *Leslie v. State*, 355 Ga. App. 244, 253 (3) (842 SE2d 550) (2020).

3. *Merger.*

Rozier argues that the trial court was required to merge his two convictions for sentencing. To its credit, the state concedes the point. And we agree.

8

"Whether offenses merge is a legal question, which we review de novo." *Nosratifard v. State*, 320 Ga. App. 564, 570 (2) (740 SE2d 290) (2013) (citation and punctuation omitted). Where, as here, "a defendant enumerates a merger error after being convicted of multiple counts of the *same* crime, the correct merger analysis requires courts to ask whether those crimes arose from a single course of conduct and, if so, whether the defendant can face multiple convictions and sentences under a unit-of-prosecution analysis." *Johnson v. State*, 313 Ga. 155, 159 (4) (868 SE2d 226) (2022) (punctuation omitted; emphasis in original).

Rozier was convicted of two counts of aggravated cruelty to animals arising from a single course of conduct, his physical altercation with the dog. So we turn to the unit-of-prosecution analysis, which requires us to "interpret[ ] the criminal statute at issue to identify the 'unit of prosecution' — 'the precise act or conduct' that the legislature criminalized." *Scott v. State*, 306 Ga. 507, 509 (2) (832 SE2d 426) (2019) (citations and punctuation omitted).

The criminal statute at issue here, OCGA § 16-12-4, provides that a person commits the offense of aggravated cruelty to animals by, among other ways, "[m]aliciously caus[ing] physical harm to an animal by depriving it of a member of its body, by rendering a part of such animal's body useless, or by seriously disfiguring

9

such animal's body or a member thereof." OCGA § 16-12-4 (d) (2). We have found no Georgia appellate cases identifying the unit of prosecution established by this Code section. But in *Busby v. State*, 332 Ga. App. 646 (774 SE2d 717) (2015), we construed the similarly worded aggravated battery statute, OCGA § 16-5-24 (a), which states that "[a] person commits the offense of aggravated battery when he or she maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." We held in *Busby* that

> [b]ased on the plain language of the statute, the act or conduct that is prohibited by OCGA § 16-5-24 (a) is maliciously causing bodily harm to another. Thus, under the facts of th[at] case, [where the defendant was alleged to have maliciously caused bodily harm to a baby in several ways], each act causing malicious bodily harm to the baby forms a "unit of prosecution" under OCGA § 16-5-24 (a).

*Busby*, 332 Ga. App. at 651 (2) (b) (punctuation omitted).

Applying the reasoning of *Busby*, we hold that the act or conduct that is prohibited by OCGA § 16-12-4 (d) is maliciously causing physical harm to an animal and that each act causing physical harm to the dog in this case forms a "unit of prosecution" under that Code section. So, as in *Busby*, the merger issue turns on

10

whether the evidence showed that the two different types of harm to the dog were caused by a single act.

Again, our decision in *Busby* is instructive. The defendant in *Busby* was charged with two counts of aggravated battery for allegedly harming the baby in two different ways. As we explained in that decision, "[i]f there were no evidence that the battery [against the baby] occurred in a manner other than in a single transaction, with no 'deliberate interval' separating any of the blows, only a single verdict for aggravated battery could stand, and those two offenses would merge as a matter of law." *Busby*, 332 Ga. App. at 651 (2) (b). See also *Taylor v. State*, 307 Ga. 755, 756 (1) (838 SE2d 261) (2020) ("a defendant may not be convicted of two or more counts of the same crime where the evidence shows that the two counts are part of a single incident"). But because the evidence in *Busby* showed more than one act causing the harm to the baby, there was no merger. *Busby*, 332 Ga. App. at 651-652 (2) (b).

In its appellate brief, the state concedes that the two convictions should merge because the dog's injuries occurred in a single transaction. And the evidence, viewed in the light most favorable to the verdict, shows that the injuries to the dog's jaw and hip occurred as part of a single transaction, without a deliberate interval separating the blows. See *Donaldson v. State*, 302 Ga. 671, 674-675 (4) (808 SE2d 720) (2017)

11

(viewing the evidence in the light most favorable to the verdict to determine whether two shots fired at a victim were part of a single incident for purposes of merging convictions on two aggravated assault counts into felony murder conviction for sentencing purposes).

Consequently, the two counts of aggravated cruelty to animals merge. So we vacate the sentence and remand for resentencing by the trial court.

*Judgment of conviction affirmed, sentence vacated, and case remanded for resentencing. Gobeil and Land, JJ., concur*.