313 Ga. 155
FINAL COPY

S21G0673.  JOHNSON v. THE STATE.

WARREN, Justice.

We granted certiorari in this case to address whether Ricky Johnson's convictions for theft by taking merge under the correct unit-of-prosecution analysis. Because the Court of Appeals applied the wrong legal analysis in evaluating whether Johnson's theft-by-taking convictions should have merged, we vacate its holding on that issue and remand with direction to apply the correct analysis.

1.    In 2013, Johnson was convicted of one count of burglary (Count 1), three counts of theft by taking based on the theft of three different Ford trucks (Counts 2, 3, and 4), and one count of theft by taking based on the taking of multiple pieces of property, including, among other things, a riding lawnmower, a plasma cutter, and a welder (Count 5).  The crimes occurred on November 1, 2007, in a large building containing a shop and office space on the property of Reid & Reid Contractors (the "company").  Of the three stolen trucks,

two were Ford flatbeds and one was a Ford service truck. One flatbed truck was parked outside the company's building; the other was parked inside a garage in front of the building; and the service truck was parked inside the shop. The thefts occurred overnight during a span of time that lasted between five and six hours.

The company had five surveillance cameras recording activity in its building. A video from one of those cameras, which recorded activity in the southwest corner of the shop, was introduced into evidence at trial. That video first showed Johnson in the shop area at 10:54 p.m. on October 31, 2007. It also showed that Johnson appeared to leave the shop and the property after completing the crimes at about 4:30 a.m.[1]

Between those two times, Johnson could be seen in the camera frame of the surveillance video that covered the southwest corner of the shop except for a number of short periods of time, none of which

[1] The surveillance video was included in the trial court record. For reasons that are not clear based on the record before this Court, the video was not part of the Court of Appeals's record. But because it was part of the original trial court record, the Clerk's Office of this Court requested and obtained the video from the Clerk's Office of the Forsyth County Superior Court.

2

lasted more than 15 minutes.  The video shows that Johnson spent the first few hours in the shop walking back and forth with a flashlight, examining company property and loading it onto a service truck by hand and by using the company's forklift.  At 2:26 a.m., he used the forklift to load a welder onto the service truck.  At 3:28 a.m., he drove the service truck out of the shop bay and out of the camera frame.  Johnson reappeared in the camera frame at 3:34 a.m., driving a different piece of equipment — a John Deere Gator — into the shop.  Johnson parked the Gator inside the shop and then walked out of the shop bay door.  He is next seen on the video driving one of the company's flatbed trucks into the shop about 15 minutes later, at 3:49 a.m.[2]  At that point, he parked the flatbed truck inside the shop and began loading it with company property, including a large lawnmower.  He also attempted, unsuccessfully, to load the Gator onto the flatbed truck.  Around 4:30 a.m., he drove the flatbed truck out of the shop bay.  After that, Johnson walked back into the

---

[2] That period of time — the 15 minutes from 3:34 a.m. until 3:49 a.m. — is the longest period of time that Johnson was not visible on the surveillance video.

shop and drove the Gator out of the shop at 4:34 a.m. He then walked back into the shop again and drove the forklift out of the shop at 4:36 a.m. Johnson is not seen on the video after 4:36 a.m.

Ultimately, both the service truck and the flatbed truck that Johnson drove out of the shop bay were stolen, as was an additional flatbed truck that does not appear in the surveillance video. In addition, a riding lawnmower, a plasma cutter, a toolbox, and a welder (among other property) were stolen that night. Neither the Gator nor the forklift was stolen.

As it turns out, the three stolen trucks were equipped with GPS trackers, and the trucks — along with the stolen equipment — were located later on the morning of November 1 in a wooded area behind a residence about 10 miles from the shop. At trial, the State presented (among other evidence) the surveillance video described above, as well as evidence that Johnson's palm print was found on the forklift that was still parked outside the company's shop. Part of the State's theory of the case was that Johnson must have had an accomplice; to that end, the prosecutor argued that, considering the

4

amount of time Johnson was in the shop, along with the 10-mile distance between the shop and the property where the stolen trucks were transported and parked, it was "obvious[ ] somebody helped [Johnson]." The prosecutor also argued that because Johnson was a party to the crimes of theft by taking of the trucks, the State did not "have to prove that [Johnson himself] drove a truck" away from the company property for the jury to find Johnson guilty of theft by taking of all three trucks. Johnson was found guilty on all counts and sentenced to a total of 40 years in prison: 20 years on the burglary count; 10 consecutive years each on Counts 2 and 3; and 10 concurrent years on Counts 4 and 5.

2. Johnson appealed pro se. The Court of Appeals affirmed in an unpublished opinion, rejecting, among other things, Johnson's contention that two of his three theft-by-taking convictions for the theft of the trucks should have merged.[3] See *Johnson v. State*, 357

---

[3] On certiorari, Johnson expands the scope of his merger claim, contending that *three of the four* theft-by-taking convictions should have merged, including the conviction for Count 5, which involved the non-truck property.

Ga. App. XXV (Case No. A20A0996) (Nov. 2, 2020). In reaching that conclusion, the Court of Appeals evaluated Johnson's merger claim using the "actual evidence" test from *Braswell v. State*, 245 Ga. App. 602, 604 (538 SE2d 492) (2000). See *Johnson*, slip op. at 15. Under that test, "'[t]he key question in determining whether a merger has occurred is whether the different offenses are proven with the same facts.'" Id. (quoting *Braswell*, 245 Ga. App. at 604). According to the Court of Appeals, "the evidence showed that one person — Johnson — stole multiple trucks. Thus, Johnson necessarily had to complete the theft of each truck prior to stealing the others." Id. The court then concluded that Johnson's theft offenses did not merge, necessarily concluding that the theft-by-taking offenses were not proven with the same facts for purposes of the "actual evidence" test it had applied. Id. Johnson petitioned for a writ of certiorari, which we granted.[4]

---

[4] Johnson proceeded pro se both in the Court of Appeals and in the petition for certiorari that he filed in this Court. After we granted certiorari, Johnson agreed to be represented by the Appellate Litigation Clinic of the University of Georgia School of Law. However, shortly after the Clinic filed its

3. "'Merger' refers generally to situations in which a defendant is prosecuted for and determined by trial or plea to be guilty of multiple criminal charges but then, as a matter of substantive double jeopardy law, can be punished — convicted and sentenced — for only one of those crimes." *Scott v. State*, 306 Ga. 507, 509 (832 SE2d 426) (2019). Substantive double jeopardy law protects a defendant from multiple punishments when his crimes arise from the same conduct. See generally OCGA § 16-1-7 (a) (1) (providing that "[w]hen the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime[,]" but "[h]e may not . . . be convicted of more than one crime" if, among other things, "[o]ne crime is included in the other"); *Neuman v. State*, 311 Ga. 83, 86 (856 SE2d 289) (2021) (explaining that substantive double jeopardy "protects against multiple

opening brief on his behalf, Johnson contacted the lead counsel and asked him to withdraw. Counsel then filed a motion to withdraw, which we granted. At the same time, we also granted permission for the Clinic to file an amicus curiae reply brief in support of Johnson, which it did. We thank Thomas V. Burch, Director of the Clinic, and his students, Courtney Hogan and Kirstiana Perryman, for their service.

convictions or punishments" for crimes "arising from the same conduct") (citation and punctuation omitted).[5]

"Merger analysis often involves counts charging two *different* crimes." *Scott*, 306 Ga. at 509 (emphasis in original). When convictions for two different crimes are the subject of a merger analysis, courts evaluate the merger claim using the "required evidence" test. See *Drinkard v. Walker*, 281 Ga. 211, 214-215 (636 SE2d 530) (2006);[6] *Dukes v. State*, 311 Ga. 561, 571 (858 SE2d 510) (2021) ("Merger analysis often involves counts charging two *different* crimes. As this Court has made clear, that is the context in which *Drinkard*'s 'required evidence' test is applied.") (citation and punctuation omitted; emphasis in original). But the "required evidence" test does not govern a merger analysis where, as here, a

---

[5] "Because the Georgia Code expands the proscription of double jeopardy beyond that provided for in the United States and Georgia Constitutions, all questions of double jeopardy in Georgia must now be determined under OCGA §§ 16-1-6 through 16-1-8." *Maxwell v. State*, 311 Ga. 673, 677 (859 SE2d 58) (2021) (citation and punctuation omitted).

[6] We previously used the "actual evidence" test to evaluate merger claims involving multiple counts for different crimes, but this Court overruled the case that adopted that test, as well as its progeny, in 2006. See *Drinkard*, 281 Ga. at 212-217.

8

defendant claims that he has been improperly convicted and sentenced for multiple counts of the *same* crime. See *Smith v. State*, 290 Ga. 768, 772-773 n.4 (723 SE2d 915) (2012) (explaining that "the 'required evidence' test only applies where the same act or transaction constitutes a violation of *two distinct statutory provisions*" and that "[b]ecause the instant case does not involve two distinct statutory provisions, the 'required evidence' test does not apply") (citation and punctuation omitted; emphasis in original).

The Court of Appeals's merger analysis was therefore erroneous in two respects. First, it erred by relying on *Braswell* and using the long-overruled "actual evidence" test to evaluate Johnson's merger claims. See *Braswell*, 245 Ga. App. at 604 (applying the "actual evidence" test). And second, it used the wrong type of merger analysis when it applied a test that governs merger for multiple counts of *different* crimes instead of multiple counts of the *same* crime — the latter being the type of merger claim Johnson presented below with respect to his convictions for theft by taking.

4. When a defendant enumerates a merger error after being

9

convicted of multiple counts of the *same* crime, the correct merger analysis requires courts to ask whether those crimes arose from "a single course of conduct" and, if so, whether the defendant can face multiple convictions and sentences under a unit-of-prosecution analysis. *Edvalson v. State*, 310 Ga. 7, 8 (849 SE2d 204) (2020) (punctuation omitted) (quoting *Coates v. State*, 304 Ga. 329, 330 (818 SE2d 622) (2018)). "'Whether offenses merge is a legal question, which [an appellate court] review[s] de novo.'" *Womac v. State*, 302 Ga. 681, 684 (808 SE2d 709) (2017) (citation omitted).

"As we have said numerous times, the text of the statute itself best reflects th[e] legislative choice" of "[w]hether a particular course of conduct involves one or more distinct 'offenses' under the statute." *Coates*, 304 Ga. at 330 (citation and punctuation omitted). In *Edvalson*, for example, we concluded that the unit of prosecution under OCGA § 16-12-100 (b) (5) for the sexual exploitation of children was "the possession of any prohibited 'visual medium' at all, whether one or one hundred" of such medium. 310 Ga. at 10. Likewise, in *Coates*, we concluded that the appropriate unit of

prosecution for a charge of possession of a firearm by a convicted felon under OCGA § 16-11-131 (b) was the "general receipt, possession, or transportation of firearms by convicted felons, rather than the specific quantity of firearms received, possessed, or transported" and that the statute "is unambiguous and permits only one prosecution and conviction for the simultaneous possession of multiple firearms." 304 Ga. at 331-332. By contrast, in *Smith*, 290 Ga. at 769, 772-774, we held that "the act of fleeing from an individual police vehicle or police officer after being given a proper visual or audible signal to stop . . . , and not just the act of fleeing itself, . . . forms the proper 'unit of prosecution,'" and rejected the defendant's claim that five separate counts of attempting to elude a police officer should have merged.

Georgia's appellate courts have also explained that part of a course-of-conduct evaluation may involve examining whether the defendant acted with the same or differing intents, whether the crimes occurred at the same place, and whether the crimes occurred at the same time or were separated by some meaningful interval of

11

time.  For example, in *Spears v. State*, 296 Ga. 598 (769 SE2d 337) (2015), disapproved of on other grounds by *Willis v. State*, 304 Ga. 686 (820 SE2d 640) (2018), we held that the defendant had engaged in two separate courses of conduct and could be convicted of two burglaries where the evidence showed that

> he made one entry of [the victim's] house with the dual intent to commit a theft and to murder her but that he then left the victim's house, drove to a church, returned to the house after realizing that he had failed to steal the victim's cigarette case containing money, and reentered the house with the intent to commit the theft of the cigarette case and money.

Id. at 601-602.  The Court of Appeals examined similar factors but reached the opposite conclusion in *Lucas v. State*, 328 Ga. App. 741 (760 SE2d 257) (2014), holding that the defendant's "acts of entering, exiting, and reentering the same restaurant twice within a five to twenty-minute period for the purpose of committing theft" could not be punished as two separate burglaries because, among other things, "the acts were committed at the same location, were inspired by the same criminal intent (to commit theft in the . . . restaurant building)," "were part of a continuous criminal act

12

spanning a matter of minutes," and were not "separated by a meaningful interval of time or with distinct intentions."[7] Id. at 743-744 (citation and punctuation omitted). See also, e.g., *Lowe v. State*, 57 Ga. 171, 171 (1876) (holding that "[a]n indictment for simple larceny in stealing two hogs at the same time and place, though alleging that one is the property of one person, and the other of another, covers but one transaction, and charges but one offense"); *Ingram v. State*, 279 Ga. 132, 133 (610 SE2d 21) (2005) (holding that an aggravated assault conviction and a conviction for murder were "part of a continuous criminal act" where they were "committed at the same time and place and inspired by the same criminal intent").[8]

---

[7] In the same vein, we have said that to determine whether a defendant's crimes arise from the "same conduct" for purposes of statutory procedural double jeopardy under OCGA § 16-1-7 (b), courts should consider whether the crimes "arise from the same transaction or continuing course of conduct, occur at the same scene, occur on the same date, and occur without a break in the action." *Maxwell*, 311 Ga. at 679 (citation and punctuation omitted).

[8] We note that in *Edvalson*, in concluding that "OCGA § 16-12-100 (b) (5) is unambiguous and permits only one prosecution and conviction for the *simultaneous* possession of multiple items of 'visual media'" depicting a minor engaged in sexually explicit conduct, we cautioned that because the case concerned "only . . . *simultaneous* possession," we expressed no opinion "regarding cases involving the possession of different visual media in separate

13

Here, by invoking an overruled and inapplicable merger test, the Court of Appeals failed to engage with the relevant case law that governs merger claims pertaining to multiple convictions for the same crime. As a result, it did not evaluate whether Johnson engaged in a single course of conduct on the night of the thefts, and, if applicable, what the unit of prosecution would be for theft by taking under OCGA § 16-8-2. "[I]t is important to conduct the applicable analysis, and it is appropriate for the Court of Appeals to do it in the first instance." *Scott*, 306 Ga. at 510 (describing acts of child molestation "alleged in different counts [as] part of a single course of conduct occurring in a relatively short time frame," holding that the Court of Appeals "failed to engage in the applicable unit-of-prosecution analysis," and remanding for that court to apply the correct analysis). We therefore vacate the Court of Appeals's holding

---

places or at separate times," thus intimating that such factors might affect a course-of-conduct analysis if presented in a different case. See 310 Ga. at 10, n.8 (emphasis supplied). We reserved this same question in *Coates*, explaining that "[b]ecause this case concerns only the simultaneous possession of multiple firearms, we do not address the statute's applicability in cases involving the possession of multiple firearms in different spaces or times." 304 Ga. at 332, n.3.

regarding the merger of Johnson's theft-by-taking convictions and remand the case to the Court of Appeals for it to apply the appropriate legal analysis, consistent with this opinion.

*Judgment vacated and case remanded with direction. All the Justices concur, except Boggs, P. J., disqualified.*

Decided January 19, 2022 – Reconsideration dismissed February 15, 2022.

Certiorari to the Court of Appeals of Georgia – 357 Ga. App. XXV.

Ricky J. Johnson, *pro se.*

*Penny A. Penn, District Attorney, James A. Dunn, Assistant District Attorney*, for appellee.

*Thomas V. Burch, Courtney Hogan, Kirstiana Perryman*, amici curiae.

15