**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

January 8, 2025

# In the Court of Appeals of Georgia

A24A1485. OWENS v. THE STATE.

BARNES, Presiding Judge.

A jury found Christopher Lynn Owens guilty of aggravated assault, three counts of aggravated battery, battery, and two counts of possession of a knife during commission of a felony in connection with the violent attack of a bar patron by Owens and other members of a motorcycle club. On appeal from the denial of his motion for new trial, Owens contends that the evidence was insufficient to support his convictions for aggravated battery and battery; his trial counsel rendered constitutionally ineffective assistance in several respects; and the trial court did not properly merge several of his convictions for sentencing. As explained below, the trial court erred in merging Owens's conviction on Count 2 of aggravated battery into his

conviction on Count 1 of aggravated assault. Because aggravated assault was the lesser included offense, the trial court should have merged Count 1 into Count 2. We further conclude that the trial court did not engage in the proper legal analysis in addressing whether Owens's three aggravated battery convictions (Counts 2-4) should merge. Accordingly, we affirm in part, vacate in part, and remand the case to the trial court for further proceedings consistent with this opinion.

"Following a criminal conviction, the defendant is no longer presumed innocent, and we view the evidence in the light most favorable to sustain the verdict." (Citation and punctuation omitted.) *Robinson v. State*, 342 Ga. App. 624, 625 (805 SE2d 103) (2017). So viewed, the evidence showed that the victim, Kenneth Williams, was a motorcyclist who at one time was in a riding club with Troy Powell. However, when Powell wanted the club to start engaging in illegal activity, Williams opposed taking the club in that direction, and the club was dissolved over their disagreement. Powell then became president of the Hard Life Motorcycle Club, which supported the Outlaws Motorcycle Club.

On Labor Day, September 7, 2015, Williams and his wife attended a charity event at the Watering Hole, a bar located in the City of Villa Rica in Carroll County.

The bar was crowded, and members of several motorcycle clubs were present. Powell was at the bar with several members of Hard Life, including Owens. Richard Brown, a member of the Outlaws, also was there at Powell's request.

After Williams and his wife arrived at the bar and ordered food, Williams walked to the restroom in the foyer. As he approached the restroom, Williams saw Owens, who was wearing his Hard Life vest with a patch bearing the name "Skeletor," standing in front of the entrance doors. Owens was "playing" with a large Bowie knife that was in a sheath strapped to his right side. The knife was over 12 inches in length and had serrated edges.

Nate Sanders, who was at the bar managing the sound system, approached Owens and told him that he could not bring his knife into the bar, and they began arguing about the knife. Powell, who was standing next to Owens, joined in the argument. Williams also was involved in the heated argument over the knife and called 911 to report that someone called "Skeletor" was at the bar wielding a knife.

Meanwhile, Brown, the Outlaws member, was engaged in a different altercation on the front patio of the bar. However, when Brown heard the commotion inside the bar, he entered the foyer through the front doors, went up to Sanders, and punched

him in the face. Powell pointed at Williams and said, "Kill the Motherf***ker" and to "[n]ot let [him] walk out." Brown punched Williams in the face, and several Hard Life members who had entered the foyer began punching Williams as he tried to defend himself. As the Hard Life members struck Williams, Owens blocked the doorway. When Williams continued to fight back against his attackers, Owens stabbed him in the chest. Williams's wife saw the stabbing, and she screamed out that Owens had stabbed her husband. Owens then fled from the bar.

Several other Hard Life members punched Williams after he was stabbed, and Williams moved towards the bar area but tripped and fell to the ground. Hard Life members punched, kicked, and stomped on Williams as he lay on the floor, and Powell joined the attack and injured Williams's shoulder. He lost consciousness as the attack continued.

After the attack ended, Williams was taken by helicopter to the hospital, where he stayed for two months, followed by another two weeks in a rehabilitation facility before returning home. When Owens stabbed Williams, the knife penetrated his left lung area, causing significant blood loss and breathing difficulties. Additionally, as result of the group attack by other Hard Life members, Williams was bruised, his left

shoulder rotator cuff was damaged, and he had a large wound in his tailbone area. His tailbone wound became infected, resulting in the wound being left open with the tailbone exposed for over a year. Williams underwent several surgeries to address his injuries, including surgery on his rotator cuff and plastic surgery on his tailbone wound.

A Carroll County grand jury returned an indictment charging Owens with one count of aggravated assault, three counts of aggravated battery, one count of battery, and two counts of possession of a knife during the commission of a felony.[1] At the ensuing jury trial, Williams testified to events as set out above, and the State introduced into evidence photographs of Williams during his hospitalization and rehabilitation and of his injuries and scars. The State called several additional witnesses who testified about the argument over the knife and the attack on Williams, including Williams's wife, another bar patron, and bar employees. Additionally, the

---

[1] Owens also was indicted on several counts of violating the Georgia Street Gang Terrorism and Prevention Act, OCGA § 16-15-1 et seq., but the trial court entered an order of nolle prosequi as to those counts. A redacted, renumbered indictment that excluded the dismissed counts was presented to the jury; in referring to the various counts in this opinion, we have followed the numbering of the counts in the redacted indictment, as did the trial court in sentencing Williams.

Several co-defendants were indicted and pled guilty to various offenses relating to the bar attack. No other defendants were tried with Owens.

State introduced into evidence and played for the jury a surveillance video recording of the foyer area of the bar at the time of the incident.[2] Owens elected not to testify but called three defense witnesses.

The jury return a verdict of guilty on all counts. For sentencing purposes, the trial court merged Owens's conviction on Count 2 of aggravated battery into his aggravated assault conviction (both of which were predicated on the stabbing of Williams) and merged his two convictions for possession of a knife during the commission of a felony. The trial court entered judgment of conviction on the non-merged counts and imposed an aggregate sentence of 40 years, with the first 25 years to be served in confinement and the remainder on probation. Owens filed a motion for new trial, as amended, in which he raised several claims, including that his trial counsel rendered constitutionally ineffective assistance. After conducting a hearing at which Owens, his wife, and his trial counsel testified, the trial court denied the motion for new trial. This appeal followed.

1. Owens contends that the evidence was legally insufficient to support his convictions for aggravated battery and battery. According to Owens, the evidence

_____

[2] The video recording had no sound.

failed to show that he acted with malicious intent or was an active participant in the subsequent attack upon Williams by other Hard Life members.

> When evaluating challenges to the sufficiency of the evidence, we view the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Smith v. State*, 308 Ga. 81, 84 (1) (839 SE2d 630) (2020). See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

"A person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another." OCGA § 16-5-23.1 (a). The offense escalates to aggravated battery where a person "maliciously causes bodily harm to another by depriving him or her of a member of his or her body, by rendering a member of his or her body useless, or by seriously disfiguring his or her body or a member thereof." OCGA § 16-5-24 (a). "Under Georgia law, a person acts

7

maliciously within the meaning of the aggravated-battery statute when [he] acts intentionally and without justification or serious provocation." (Citation and punctuation omitted.) *Perry v. State*, 366 Ga. App. 341, 343 (1) (883 SE2d 27) (2023).

The indictment alleged that Owens committed battery by striking Williams and causing visible bodily harm to him in the form of abrasions (Count 5). The indictment alleged that Owens committed aggravated battery by seriously disfiguring Williams by cutting his body with a knife (Count 2); by seriously disfiguring him by striking and breaking his tailbone (Count 3); and by rendering his arm useless by damaging his rotator cuff (Count 4).

Construed in favor of the verdict, the evidence presented at trial and summarized above — including the testimony of Williams and the other eyewitnesses about the stabbing, the bar surveillance video, and the photographs of Williams's knife wounds — was sufficient to enable a rational jury to find Owens guilty beyond a reasonable doubt of committing aggravated battery by stabbing Williams with the knife. See OCGA § 16-5-24 (a); *Jackson*, 443 U. S. at 319 (III) (B). Contrary to Owens's suggestion, an inference of malicious intent was permissible in this case, as the jury could find from the testimony and video that Owens acted intentionally and

8

without justification or provocation in stabbing Williams. See *Perry*, 366 Ga. App. at 343 (1). See also OCGA § 16-2-6 ("A person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted.").

As to the remaining counts of aggravated battery and battery predicated on the attack of Williams by other Hard Life members, "[a] person who does not directly commit a crime may be convicted upon proof that the crime was committed and that person was a party to it." (Citation and punctuation omitted.) *Glenn v. State*, 306 Ga. 550, 553 (2) (832 SE2d 433) (2019). See OCGA § 16-2-20 (a) ("Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."). Although the evidence showed that Owens did not punch, kick, or stomp on Williams,

> a person who intentionally aids or abets in the commission of the crime[] or intentionally advises, encourages, hires, counsels, or procures another to commit the crime[] nonetheless may be convicted as a party to a crime. And while mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may

be inferred from presence, companionship, and conduct before, during and after the offense.

(Citations and punctuation omitted.) *Glenn*, 306 Ga. at 553 (2). See OCGA § 16-2-20 (b) (3), (4). "Whether a defendant was a party to the charged crime is normally a question for the jury." (Citations and punctuation omitted.) *Platt v. State*, 335 Ga. App. 49, 53 (1) (a) (778 SE2d 416) (2015).

Viewed in the light most favorable to the verdict, the testimony and surveillance video showed that Owens was a member of Hard Life and was at the bar with Powell and the other Hard Life members on the day in question; that Powell ordered Hard Life members to kill Williams in response to the heated argument over Owens's knife; and that Hard Life members then collectively attacked Williams, including Owens, who participated by blocking the doorway and stabbing Williams. This evidence authorized the jury to find that Owens shared a common criminal intent with the direct perpetrators of the crimes. And based on the evidence that he actively participating in the group attack, Owens could be held "criminally responsible for the injuries inflicted by all parties to the crime even if he personally delivered only one blow." (Citation and punctuation omitted.) *Wilkinson v. State*, 298 Ga. App. 190, 193

10

(1) (679 SE2d 766) (2009). See *Garrett v. State*, 288 Ga. 269, 271 (3) (702 SE2d 875) (2010) (holding that defendant who "joined in the attack on the victim" could be held "criminally responsible for the injuries inflicted on the victim even if he personally fired only one shot"); *Looney v. State*, 221 Ga. App. 224, 225 (1) (471 SE2d 243) (1996) (concluding that defendant who, among other things, blocked the escape route could be held responsible for the physical assault of the victim committed by his companion); *Moore v. State*, 216 Ga. App. 450, 450 (1) (454 SE2d 638) (1995) (explaining that a defendant who along with a confederate engages in a fight with a victim "necessarily aids and abets the confederate in his assault upon the other, and is therefore a party to the crime committed by the confederate") (citation and punctuation omitted). A rational jury thus was authorized to find beyond a reasonable doubt that Owens was a party to the aggravated batteries and battery committed upon Williams by the other Hard Life members. See id.

In so ruling, we reject Owens's contention that he could not be held criminal responsible for the blows administered by other Hard Life members after he stabbed Williams because he fled from the bar. Although Owens fled from the bar as other Hard Life members continued to attack Williams, the jury could find, as previously

11

noted, that Owens shared a common criminal intent with the other members, and the jury could further find that Owens's act of stabbing Williams weakened him and made it easier for the other members to overcome his resistance and inflict grave injuries on him. Hence, the jury could conclude that while not present for the entire attack, Owens nevertheless aided and abetted that attack. See *Jenkins v. State*, 159 Ga. App. 183, 183 (1) (283 SE2d 49) (1981) (holding that defendant could be convicted as part to the crime even if he "was not physically present at the scene of the [crime] . . . [and] he did not personally commit the act"). Moreover, to the extent that Owens seeks to claim on appeal that the evidence showed that he abandoned the group attack, abandonment of a criminal enterprise before its completion is an affirmative defense to accomplice liability that requires "a voluntary and complete renunciation of criminal purpose." *Jones v. State*, 246 Ga. App. 494, 495 (1) (b) (540 SE2d 693) (2000). See OCGA § 16-4-5 (a). And "[a] renunciation of criminal purpose is not voluntary and complete if it results from a belief that circumstances exist which will increase the probability of detection or apprehension of the person." (Citation and punctuation omitted.) *Jones*, 246 Ga. App. at 495 (1) (b). See OCGA § 16-4-5 (b) (1). Here, there was evidence that Williams called 911 in the presence of Owens during the

12

heated argument over the knife, and that Williams's wife screamed out that Owens had stabbed Williams immediately before he fled from the bar. Such evidence would support an inference that Owens left to avoid apprehension rather than to renounce his criminal purpose. See *Jones*, 246 Ga. App. at 495 (1) (b).

For all of the foregoing reasons, the evidence was sufficient to support Owens's convictions on the three counts of aggravated battery and one count of battery.

2. Owens contends that his trial counsel was constitutionally ineffective for (a) failing to investigate and assert an insanity defense; (b) failing to object to victim impact evidence; and (c) failing to object to opinion testimony regarding the necessity of lethal force. To prevail on a claim of ineffective assistance of counsel under the test enunciated in *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 S Ct 2052, 80 LE2d 674) (1984),

> a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant. To satisfy the deficiency prong, a defendant must demonstrate that his attorney performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms. This requires a defendant to overcome the strong presumption that trial counsel's performance was adequate. To satisfy the prejudice prong, a defendant must establish a reasonable

13

probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong.

(Citations and punctuation omitted.) *Smith v. State*, 308 Ga. 81, 87 (3) (839 SE2d 630) (2020). "In reviewing a trial court's ruling on an ineffective-assistance claim, we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the relevant legal principles to the facts." *Copeland v. State*, 316 Ga. 452, 457 (3) (888 SE2d 517) (2023). Guided by these principles, we turn to Owens's specific claims of ineffective assistance.

(a) Owens argues that his trial counsel was ineffective for failing to investigate and assert an insanity defense.[3] We conclude that Owens has failed to show that his

---

[3] "[M]ental abnormality, unless it amounts to insanity, is not a defense to a crime." (Citation and punctuation omitted.) *State v. Abernathy*, 289 Ga. 603, 607-608 (4) (a) (715 SE2d 48) (2011).

> In Georgia, a person is not legally insane simply because he suffers from schizophrenia or a psychosis. Instead, a defendant is not guilty by reason of insanity if, at the time of the criminal act, he or she did not have the mental capacity to distinguish between right and wrong in relation to such act or a mental disease caused a delusional compulsion that overmastered his will to resist committing the crime.

trial counsel was deficient or that he suffered any prejudice from the alleged deficiency.

At the hearing on his motion for new trial, Owens called his trial counsel to testify, and counsel explained that after his appointment, he learned that Owens previously had been institutionalized for psychiatric issues and had been diagnosed with bipolar disorder and post-traumatic stress disorder ("PTSD"). However, counsel testified that he ultimately came to the conclusion that an insanity defense was not viable, chose not to seek funds for a further psychological evaluation, and instead decided to pursue self-defense as the best defense to the charges. Although trial counsel did not believe that Owens's psychological issues rose to the level of legal insanity, counsel did elicit testimony about Owens's physical and mental health struggles from Owens and his wife during the sentencing phase to support his argument for a lower sentence than requested by the State.

---

(Citations and punctuation omitted.) *Serdula v. State*, 356 Ga. App. 94, 114 (5) (845 SE2d 362) (2020). See OCGA §§ 16-3-2; 16-3-3. A defendant is presumed sane, and "a defendant claiming insanity bears the burden to prove his insanity by a preponderance of the evidence." (Citation and punctuation omitted.) *Serdula*, 356 Ga. App. at 114 (5).

Trial counsel testified that in making his decision regarding the viability of an insanity defense, he reviewed a court-ordered psychiatric evaluation of Owens conducted by the Georgia Department of Behavioral Health and Developmental Disabilities prior to his appointment to the case that determined Owens was competent to stand trial. Counsel also spoke with Owens's wife about his mental health issues, reviewed Owens's mental health records, and spoke with other attorneys at the Carroll County Public Defender's Office about the possibility of raising an insanity defense. Additionally, trial counsel met with Owens approximately 15 times before trial and testified that while Owens was anxious about his case, he was an intelligent individual who appeared to understand the case against him and was able to assist in preparing for trial. According to trial counsel, Owens had no delusions about what had transpired at the bar, asserted that he had acted in self-defense, and had in-depth discussions with counsel about the charges and his defense. Trial counsel further noted that although Owens did exhibit some signs of paranoia in that he initially believed that the bar surveillance video had been doctored, Owens changed his mind and accepted that the video was accurate after counsel hired an expert who evaluated the video and concluded that there was no tampering.

"Trial counsel's decision about which defense to present is a matter of trial strategy," and "decisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." (Citations and punctuation omitted.) *Floyd v. State*, 307 Ga. 789, 800 (4), 802 (4) (b) (837 SE2d 790) (2020). Furthermore, "generally speaking in non-capital cases, a trial counsel's decision to forego or curtail further investigation of an accused's mental health, even when there has been a previous mental hospitalization, is reasonable when an expert has determined that the defendant is fit to stand trial[.]" (Citations and punctuation omitted.) *Taylor v. State*, 315 Ga. 630, 647 (5) (c) (884 SE2d 346) (2023).

Given the testimony of trial counsel at the new trial hearing, Owens has failed to overcome the strong presumption that his counsel discharged his duties in an objectively reasonable manner. "This is not a case in which counsel made no effort to investigate the potential for a defense . . . based on mental health issues, nor is this a case in which counsel relied exclusively upon [his] own lay evaluation of the mental health of [his] client." (Citations, punctuation, and emphasis omitted.) *Arnold v. State*, 292 Ga. 268, 271 (2) (a) (737 SE2d 98) (2013). To the contrary, trial counsel

based his decision on his review of the court-ordered psychiatric evaluation finding that Owens was competent to stand trial, his consideration of Owens's mental health records, his conversations with Owens's wife and fellow public defenders, and his multiple discussions with Owens and observations of his behavior. Under these circumstances, we cannot say that trial counsel's strategic decision to forgo further investigation or pursuit of an insanity defense was so patently unreasonable that no competent attorney would have chosen it, and thus Owens cannot satisfy the deficiency prong of his ineffective assistance claim. See id. See also *State v. Abernathy*, 289 Ga. 603, 607-608 (4) (a) (715 SE2d 48) (2011) (concluding that trial counsel's decision to pursue theory that the defendant acted in self-defense rather than raise an insanity defense was a reasonable strategic decision, where, among other things, counsel reviewed and relied upon the expert mental health evaluation of the defendant finding that he was competent to stand trial).

Nor has Owens shown that he was prejudiced by his trial counsel's failure to further investigate an insanity defense. Owens did not introduce any mental health records or present any expert testimony at the new trial hearing to support his claim that he had a viable insanity defense that his counsel could have pursued at trial.

Absent such evidence, the trial court was entitled to find that his ineffective assistance claim rested on mere speculation. See *Devega v. State*, 286 Ga. 448, 450 (4) (a) (689 SE2d 293) (2010); *Crapps v. State*, 329 Ga. App. 820, 827-828 (3) (b) (766 SE2d 178) (2014). And while it is true that Owens's wife testified at the hearing that it was her opinion that Owens was insane at the time of the group attack, even if such testimony were admissible, the trial court was not required to credit it. See *Flesche v. State*, 254 Ga. App. 3, 6 (1), (2) (561 SE2d 160) (2002) (concluding that trial court "was authorized to and did find the evidence of mental impairment incredible" and that the court was not required to "accept the testimony of relatives" regarding the defendant's mental state). Accordingly, Owens failed to show that there was a reasonable probability that the result of his trial would have been different, had his trial counsel further investigated raising an insanity defense. See *Ward v. State*, 274 Ga. App. 511, 515 (4) (a) (618 SE2d 154) (2005) (concluding that the defendant failed to show prejudice resulting from his trial counsel's failure to investigate his mental health condition, where at the new trial hearing he presented no evidence of his condition other than the testimony of his mother and a family friend).

(b) Owens maintains that his trial counsel was ineffective for failing to object when the State introduced photographs and testimony that constituted victim impact evidence during the guilt/innocence phase of his trial. We will address the (i) photographs and (ii) testimony each in turn.

(i) *Photographs.* During the guilt/innocence phase, the State introduced photographs of Williams in the hospital and in the rehabilitation facility that showed him connected to a tracheotomy tube and other medical equipment, as well as close-up photographs of his wounds and resulting scars.

"Under Georgia law, evidence about a crime victim's personal characteristics and the emotional impact of the crime on the victim, the victim's family, and the victim's community generally is not admissible in the guilt/innocence phase of a criminal trial." *Lofton v. State*, 309 Ga. 349, 363 (6) (b) (ii) (846 SE2d 57) (2020). See OCGA § 17-10-1.2 (a) (3) (authorizing victim impact evidence in the sentencing phase).[4] As our Supreme Court has explained, "background information about the

---

[4] OCGA § 17-10-1.2 (a) (3) provides in part:

> In all cases other than those in which the death penalty may be imposed, prior to fixing of the sentence as provided for in Code Section 17-10-1 or the imposing of life imprisonment as mandated by law, and before rendering the appropriate sentence, including any order of restitution, the court shall allow the victim, as such term is defined in

20

victim that is not relevant to the issues in the guilt/innocence phase, particularly the sort of background information likely to engender the jury's sympathies, should not be presented to the jury during that phase." (Citation and punctuation omitted.) *Lofton*, 309 Ga. at 363-364 (6) (b) (ii).

The photographs at issue in this case, however, did not constitute impermissible victim impact evidence.

> There is abundant case authority that photographs showing an accurate and correct representation of a person or an object material to the issues in the case are admissible. And, as a general rule, photographs showing the extent and nature of the victim's injuries caused by the defendant are relevant and material in a criminal case[.]

(Citations and punctuation omitted.) *Robinson v. State*, 342 Ga. App. 624, 631 (2) (805 SE2d 103) (2017).

Here, to prove aggravated assault, the State was required to show that Owens assaulted Williams with a knife, on object that when used offensively was likely to result in serious bodily injury (Count 1); to prove the aggravated battery charges, the

---

Code Section 17-17-3, the family of the victim, or such other witness having personal knowledge of the crime to testify about the impact of the crime on the victim, the family of the victim, or the community. . . .

State was required to prove serious disfigurement of Williams's body (Counts 2-3) and the rendering of a body part useless (Count 4); and to prove battery, the State was required to prove that Williams suffered visible bodily harm (Count 5). See OCGA §§ 16-5-21 (a) (2); 16-5-23.1 (a); 16-5-24 (a). Photographic evidence of Williams' injuries and scars thus was relevant and admissible to prove necessary elements of the charged offenses. See *Lacey v. State*, 288 Ga. 341, 345 (4) (b) (703 SE2d 617) (2010) (concluding that "photographs of [the victim's] injuries were directly relevant and admissible to prove the charge against [the defendant] of committing aggravated assault"); *Philpot v. State*, 311 Ga. App. 486, 488 (2) (716 SE2d 551) (2011) (holding that "photographs of the victim's bandaged face and neck were material and relevant to show the extent and severity of the injuries that she suffered" in case involving charges of aggravated battery and aggravated assault); *Cail v. State*, 194 Ga. App. 584, 584 (1) (391 SE2d 444) (1990) (concluding that evidence of scar from victim's wound was relevant to prove aggravated assault); *Burrell v. State*, 186 Ga. App. 48, 48 (1) (366 SE2d 385) (1988) (holding that evidence of stab wounds and surgical scars was relevant to show the extent of the defendant's injuries and the deadliness of the weapon in aggravated assault case); *Miller v. State*, 155 Ga. App. 54, 55-56 (4) (270

22

SE2d 466) (1980) (concluding that jury was entitled to find that victim was seriously disfigured for purposes of aggravated battery based on evidence of scars from gunshot wounds). Moreover, the photographs showing Williams connected to a tracheotomy tube and other medical equipment were relevant and admissible because they further demonstrated the nature and severity of his injuries. See *Davis v. State*, 299 Ga. 180, 190 (2) (b) (787 SE2d 221) (2016) (concluding that photographs of victim "attached to various monitors and life support machines" and of "an MRI scan of the victim's head . . . were relevant to show the nature and extent of the victim's injuries"); *Freeman v. State*, 333 Ga. App. 6, 10-12 (2) (775 SE2d 258) (2015) (concluding that evidence of the victim's impaired physical condition was relevant to prove the severity of the injuries caused by the defendant), disapproved in part on other grounds by *Martin v. McLaughlin*, 298 Ga. 44, 46, n. 3 (779 SE2d 294) (2015). And given their relevance and materiality to the charged offenses, "the photographs were admissible even if they, to some extent, duplicated other photographs." (Citations and punctuation omitted.) *Robinson*, 342 Ga. App. at 632 (2). Accordingly, an objection to introduction of the photographs would have been meritless, and Owens thus has

failed to show that his trial counsel was deficient in failing to object. See *Ivey v. State*, 305 Ga. 156, 162 (2) (c) (824 SE2d 242) (2019).

(ii) *Testimony.* During the guilt/innocence phase, the State questioned Williams about the long-term effects that he had experienced as a result of his injuries, and Williams responded that he suffered from PTSD, anxiety, and depression. The State also asked Williams how his life had been affected by his injuries, and Williams testified that he had difficulties in sleeping in the same bed as his wife because he "[saw] the fight almost every night"; that his wife suffered from the same issues as him; and that his son experienced "withdrawal syndromes." Upon similar questioning by the State, Williams's wife testified that "he [fought] in his sleep all the time" and no longer enjoyed riding his motorcycle or being in crowds, and that the attack and hospitalization caused their 11-year-old son to suffer.

Pretermitting whether the testimony of Williams and his wife constituted impermissible victim impact evidence and whether counsel was deficient in failing to object, we conclude that Owens has failed to show that he was prejudiced by its admission. The trial court instructed the jury to consider the facts objectively and not to show favor or sympathy to one party or another, and "generally we presume that

juries follow the trial court['s] instructions." *Lofton*, 309 Ga. at 366 (6) (b) (iv).

Furthermore, the evidence of Owens's guilt — which included the testimony of

Williams and several other eyewitnesses, as well as the surveillance video of the attack

— was strong. In light of the trial court's instructions and the strength of the

evidence, Owens has failed to show that there is a reasonable probability that the

outcome of his trial would have been different, had trial counsel objected to the

allegedly improper victim impact testimony. See id. (concluding that defendant failed

to show that he was prejudiced by his trial counsel's failure to object to improper

references to victim impact in light of the trial court's jury instruction regarding

sympathy and the strength of the evidence of the defendant's guilt); *Walker v. State*,

360 Ga. App. 211, 217-218 (4) (860 SE2d 868) (2021) (determining that error in

admission of victim impact evidence was harmless because the State presented strong

evidence of the defendant's guilt).[5]

---

[5] In a related enumeration of error addressing the same photographs and testimony, Owens contends that the trial court committed plain error by allowing the admission of victim impact evidence.

> To establish plain error, [Owens] must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity or public reputation of judicial proceedings. To show that the error affected his

(c) Owens argues that his trial counsel was ineffective for failing to object to opinion testimony that lethal force was not necessary. More specifically, at trial, Brown testified to his involvement in the bar incident and remarked that no one "would be here" if Owens had not stabbed Williams. The State then asked Brown if he felt that the use of lethal force was necessary, and Brown responded that it was not and that use of the knife was a "cowardice act." According to Owens, his trial counsel was ineffective in failing to object because Brown's testimony went to the ultimate issue in the case, invaded the province of the jury, offered an impermissible legal conclusion, and fell outside of the scope of his knowledge.

Pretermitting whether Brown's testimony was inadmissible and whether trial counsel was deficient in failing to object, we conclude that Owens has failed to

---

substantial rights, [Owens] is required to show that error probably affected the outcome of his trial.

(Citation and punctuation omitted.) *Bozzie v. State*, 302 Ga. 704, 707 (2) (808 SE2d 671) (2017). See OCGA § 24-1-103 (d). As to the photographs, Owens has not shown error, much less plain error, in their admission for the same reasons discussed supra in Division 2 (b) (i). As to the testimony of Williams and his wife, Owens has failed to show that admission of the testimony probably affected the outcome of the trial for the same reasons discussed supra in Division 2 (b) (ii). See *Bozzie*, 302 Ga. at 711 (4) (b) (noting that "[t]he prejudice step of the plain-error standard is equivalent to the prejudice prong for an ineffective assistance of counsel claim").

establish prejudice. As previously noted, the evidence against Owens was strong. Furthermore, if trial counsel had objected to Brown's testimony,

> the trial court might well have responded with curative instructions, charging the jury that determining guilt, assessing the credibility of the evidence, resolving conflicts in the evidence, and weighing the evidence are tasks solely for the jury. Yet, the trial court gave precisely those sorts of instructions at the close of the case[.]

*Pyatt v. State*, 298 Ga. 742, 757 (6) (b) (784 SE2d 759) (2016). And the trial court also thoroughly charged the jury on the law of self-defense. Based on the strength of the evidence against Owens and the jury instructions given by the trial court, Owens has failed to show that there is a reasonable probability that the result of his trial would have been different, if his trial counsel had objected to Brown's testimony. See id. at 757-758 (6) (b); *Nolton v. State*, 196 Ga. App. 690, 692 (2) (396 SE2d 605) (1990).

> (d) We also must address the issue of cumulative error.

> Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel — at least where those errors by the court and counsel involve evidentiary issues.

(Citation and punctuation omitted.) *Walker*, 360 Ga. App. at 218 (5). Here, in light of the strong evidence of Owens's guilt, we conclude that the cumulative effect of the errors presumed in this opinion does not warrant a new trial. See id.

3. Owens contends that the trial court erred in merging his conviction of aggravated battery (Count 2) into his aggravated assault conviction (Count 1) for purposes of sentencing. According to Owens, the trial court instead should have merged Count 1 into Count 2 because aggravated assault was the lesser included offense. We agree with Owens.

"Whether offenses merge is a legal question, which we review de novo." (Citation and punctuation omitted.) *Regent v. State*, 299 Ga. 172, 174 (787 SE2d 217) (2016). "While an accused may be prosecuted for more than one crime arising out of the same criminal conduct, he may not be convicted of more than one crime arising out of the same criminal conduct where one crime is included in the other." (Emphasis omitted.) Id. at 175. See OCGA § 16–1–7 (a) (1). One crime is included in another if that crime differs from the other "only in the respect that a less serious injury or risk of injury to the same person, property, or public interest . . . suffices to establish its commission." OCGA § 16-1-6 (2).

28

By their terms, Counts 1 and 2 of the indictment accused Owens of committing aggravated assault and aggravated battery through the same conduct — cutting Williams with the knife. The two counts "only differ with respect to the seriousness of the injury or risk of injury suffered by the victim." *Regent*, 299 Ga. at 176. The aggravated assault count required the State to prove that Owens cut Williams with a knife, an object that when used offensively was "*likely* to result in serious bodily injury," while the aggravated battery count required the State to prove "*actual* bodily harm by serious disfigurement" resulting from Owens cutting Williams with the knife. (Emphasis in original.) Id. Because, as charged here, the aggravated assault was a lesser included offense of aggravated battery, the trial court should have merged Count 1 (aggravated assault) into Count 2 (aggravated battery) for purposes of sentencing. See id.; *Gaines v. State*, 360 Ga. App. 546, 547-548 (861 SE2d 457) (2021); *Mills v. State*, 187 Ga. App. 79, 80-81 (4) (369 SE2d 283) (1988). Hence, the trial court erred in sentencing Owens for the aggravated assault rather than the aggravated battery. See id. We therefore vacate Owens's conviction and sentence on Count 1 and remand for the trial court to merge Count 1 into Count 2 and resentence Owens accordingly.

4. Owens also contends that the trial court erred in failing to merge his three aggravated battery convictions (Counts 2-4) for purposes of sentencing because they arose from a single course of conduct.

"When a defendant enumerates a merger error after being convicted of multiple counts of the same crime, the correct merger analysis requires courts to ask whether those crimes arose from a single course of conduct and, if so, whether the defendant can face multiple convictions and sentences under a unit-of-prosecution analysis." (Citations, punctuation, and emphasis omitted.) *Johnson v. State*, 313 Ga. 155, 159 (4) (868 SE2d 226) (2022). In determining whether the crimes arose from a single course of conduct, courts may examine "whether the defendant acted with the same or differing intents, whether the crimes occurred at the same place, and whether the crimes occurred at the same time or were separated by some meaningful interval of time." Id. If the crimes arose from a single course of conduct, courts then must perform a unit-of-prosecution analysis to determine "whether the course of conduct involves one or more distinct 'offenses' under the statute" at issue. (Citation and punctuation omitted.) Id. See *Busby v. State*, 332 Ga. App. 646, 651 (2) (b) (774 SE2d

717) (2015) (applying the "unit of prosecution" analysis to two family violence aggravated battery convictions).

Notably, in the present case, the trial court declined to address the merger question on the basis that alleged sentencing errors or irregularities cannot properly be made the grounds of a motion for new trial. See *Chapman v. State*, 118 Ga. 58, 58 (44 SE 814) (1903) ("Objections to a sentence can not be properly made grounds of a motion for a new trial."); *Wilson v. State*, 84 Ga. App. 703, 708 (5) (67 SE2d 164) (1951) ("Objection that a sentence imposed in a criminal case is for any reason illegal or irregular cannot be made the ground of a motion for a new trial.") (citation and punctuation omitted). But "a conviction that merges with another conviction is void — a nullity — and a sentence imposed on such a void conviction is illegal. Thus, merger claims are a species of *void-conviction claim*[.]" (Citations and punctuation omitted; emphasis supplied.) *Jackson v. Crickmar*, 311 Ga. 870, 873 (2) (860 SE2d 709) (2021). See *Williams v. State*, 287 Ga. 192, 193 (695 SE2d 244) (2010) (explaining that a merger claim "is a specific attack on the conviction"). And while a merger claim must come before the trial court in a type of proceeding in which a void conviction may be challenged, *Jackson*, 311 Ga. at 873 (2), a motion for new trial is

such a proceeding. See *Middleton v. State*, 309 Ga. 337, 339-340 (2) (846 SE2d 73) (2020) (noting that "a motion for new trial is a proper proceeding for challenging a void criminal judgment"). The trial court therefore erred in ruling that Owens could not raise his merger claims by way of a motion for new trial.

By erroneously ruling that Owens could not raise his merger claims in a new trial motion, the trial court "failed to engage with the relevant case law that governs merger claims pertaining to multiple convictions for the same crime." *Johnson v. State*, 313 Ga. 155, 160 (4) (868 SE2d 226) (2022). As a result, the trial court did not evaluate whether Owens's aggravated battery convictions arose from a single course of conduct, and, if they did, whether multiple convictions and sentences were authorized under the unit-of-prosecution analysis. See id. "It is important to conduct the applicable analysis, and under the circumstances here, it is appropriate for the trial court to do it in the first instance." (Citation and punctuation omitted.) *McDaniel v. State*, 360 Ga. App. 194, 210 (4) (860 SE2d 806) (2021). Accordingly, we vacate Owens's convictions and sentences on the three counts of aggravated battery (Counts 2-4) and remand for the trial court to apply the appropriate merger analysis, consistent

with this opinion.[6] See id. See also *Wheeler v. State*, 314 Ga. 484, 487 (2) (877 SE2d 565) (2022) (remanding case for trial court to determine merger issue, where the trial court made no findings on whether merger was appropriate as a matter of fact), disapproved in part on other grounds by *Blash v. State*, 318 Ga. 325, 330 (1) (a), n. 3 (898 SE2d 522) (2024).

*Judgment affirmed in part and vacated in part, and case remanded with direction.*

*Gobeil and Pipkin, JJ., concur.*

---

[6] We express no opinion as to whether any of the aggravated battery convictions should merge.